### Barnett's Administrator v. Brand.

(Decided June 18, 1915.)

Appeal from Mason Circuit Court.

1. Physicians and Surgeons—Malpractice—Witnesses—Competency— Subsection 2, Section 606, Civil Code.—Under Subsection 2, Section 606, Civil Code, prohibiting any person from testifying for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by, one who is dead, when

the testimony is offered to be given, except in certain instances not involved, a physician is not competent, in an action against him by the administrator of a patient to recover damages for the patient's death, alleged to have resulted from malpractice in the performance of an operation, to testify to any verbal statement made to him by the decedent, or as to what he saw or did in performing the operation.

2. Physicians and Surgeons—Malpractice—Leaving Sponge in Wound —Reliance on Nurse's Count—Liability—Instruction.—A surgeon cannot relieve himself from liability for injury to a patient by leaving a sponge in the wound after an operation, by a custom requiring the attending nurse to count the sponges used and removed and his reliance on the statement of the nurse that the sponges were all accounted for; and an instruction to this effect is erroneous.

3. Physicians and Surgeons—Sponges—Reliance on Nurse's Count— Custom—Evidence.—In an action for damages for malpractice in leaving a sponge in the wound, the custom of relying on the nurse's count and accepting her statement is a circumstance to be considered by the jury, in connection with the other facts attending the operation, in determining whether or not the defendant exercised reasonable care and skill in the performance of the operation.

4. Physicians and Surgeons—Instruction.—That part of an instruction telling the jury that the only negligence shown was the leaving of a sponge in the abdomen of the decedent is erroneous, where it appears that the operation was performed on Friday and on Sunday the physician was informed that one of the pads was missing and he did not attempt to remove the pad until the following Tuesday, and there was expert evidence to the effect that, under such circumstances, it was his duty to remove the sponge promptly, provided this could be done without endangering the life of the patient.

5. Physicians and Surgeons—Instruction.—Where, in an action for damages for the death of a patient, alleged to have been caused by leaving a sponge in the wound, there was evidence to the effect that when the operation was nearing completion it was necessary to administer stimulants and resort to artificial respiration and to close the operation in order to prevent the death of the patient, the court should tell the jury that if they believe from the evidence that the defendant believed, and had reasonable grounds to believe, that the condition of the decedent was such that further delay in exploring for pads or sponges, or in closing the operation, would endanger her safety, the defendant was not negligent in then leaving the pad or sponge in the decedent's abdomen and that they cannot find for the plaintiff on that ground.

J. M. COLLINS and A. D. COLE for appellant.

WORTHINGTON, COCHRAN & BROWNING and SLATTERY & REESE for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Charging that her death was due to malpractice, Robert Barnett, as administrator of Florence Barnett, deceased, brought this action against Doctor Leslie Brand to recover damages. From a verdict and judgment in favor of the defendant plaintiff appeals.

Briefly stated, the facts are these: Mrs. Barnett had been an invalid and a great sufferer for many years. In her efforts to alleviate her suffering she became addicted to morphine. In the spring of 1911, the defendant was called into the case by Mrs. Barnett's family physician, Doctor Winder, and in May of that year he removed a glass tube from her womb and drained off an accumulation of pus. After a slight improvement Mrs. Barnett became worse. Another slight operation was performed in the early fall of that year. In the month of November defendant was employed to perform an operation for the removal of Mrs. Barnett's ovaries. Under an arrangement with Mr. Barnett, the decedent's husband, defendant telephoned to the Good Samaritan Hospital at Cincinnati for a trained nurse. A Miss Tracy was sent to Maysville by the hospital authorities. She was a competent nurse. She went to the Barnett home on November 23rd, the day before the operation, to prepare Mrs. Barnett for the operation. The operation was performed on Friday, the following morning. Three other physicians—Doctors Samuel, Winder and Lekites—were present. Doctor Samuel administered the anaesthetic, Doctor Winder watched the patient's pulse, while the defendant, assisted by Doctor Lekites, performed the operation. When the abdominal cavity was opened it was found that Mrs. Barnett was suffering from purulent peritonitis and that one ovary was entirely gone. It also appeared that there was a rupture in the fallopian tube leading to this ovary and that the tube leading to the other ovary was infected. Ordinary gauze pads were used to absorb the pus. These pads were in charge of the nurse. When the operation was nearing completion, Mrs. Barnett collapsed, and it was found necessary to administer stimulants and resort to artificial respiration. Witnesses for the defendant claim that on account of this condition it was imperative, in order to prevent the patient from dying upon the table, to conclude the operation immediately. The

affected parts were packed with drainage material, one end of which extended into the vagina. Before closing the incision, the nurse was asked if she had all the gauze pads. She replied that she had. On Sunday following the operation, the defendant was informed by the nurse that one of the pads was missing. Two days later the defendant visited the decedent. Thereupon he reopened the incision and inserted fresh drainage. In removing the old drainage it was found that one of the gauze pads had been left in the abdomen. The evidence for plaintiff is to the effect that her death resulted from the shock of the two operations. Defendant's witnesses agree that the presence of the gauze pad was not the cause of her death, but that her condition was such that she would have died anyhow. Defendant also introduced evidence to the effect that it was customary among skillful surgeons to rely upon the nurse's count of the pads used in an operation and to accept her statements, particularly in cases where the necessity for haste precludes the surgeon from making an exploration.

1. It is first insisted that the trial court erred in permitting the defendant to testify to conversations which he had with the decedent, to the conditions which he discovered in performing the various operations upon her and to the circumstances attending the various operations.

Sub-section 2, Section 606, of the Civil Code is as follows:

"2. (Infant—lunatic or dead person—when party may testify against.) Subject to the provisions of Sub-section 7 of this section, no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by, an infant under fourteen years of age, or by one who is of unsound mind or dead when the testimony is offered to be given except for the purpose, and to the extent, of affecting one who is living, and who, when over fourteen years of age and of sound mind, heard such statement, or was present when such transaction took place, or when such act was done or omitted, unless—

"a. (Infant—provision as to.) The infant or his guardian shall have testified against such person, with reference to such statement, transaction or act; or,

"b. (Person of unsound mind). The person of unsound mind shall, when of sound mind, have testified against such person, with reference thereto; or,

"c. (Decedent—provision as to.) The decedent, or a representative of, or some one interested in, his estate, shall have testified against such person, with reference thereto; or,

"d. (Agent of decedent or person of unsound mind.) An agent of the decedent or person of unsound mind, with reference to such act or transaction, shall have testified against such person, with reference thereto, or be living when such person offers to testify, with reference thereto."

In the case under consideration the testimony of the defendant was not given for the purpose of affecting one who was living, and who, when over fourteen years of age and of sound mind, heard the statement testified to, or was present when the transaction took place, or when the act was done or omitted; nor did the decedent or representative of, or anyone interested in her estate, testify against the defendant with reference thereto; nor did an agent of the decedent, with reference to such act or transaction, testify against the defendant with reference thereto; nor was such agent living when the defendant offered to testify. In short, the case does not fall within any of the exceptions to the Code provision. The question presented, therefore, is: Does the Code provision prohibit a physician from testifying for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by, the decedent in an action brought by the administrator of the decedent to recover damages for malpractice. It is suggested that the purpose of the Code provision was to prevent estates from being subjected to unjust claims, and it was not intended to prohibit a party from testifying for himself in an action brought against him by an estate. While it may be true that the primary purpose of the provision was to prevent the assertion of unjust claims against an estate, the language of the Code is sufficiently broad and comprehensive to prohibit such testimony, whether the action be brought by or against the person offering to testify; and it has been so construed by this court. Thus, in a suit by the executor of William McCarley to recover on a note executed to William McCarley by Thomas N. Black and his wife, Mary N. Black, it was held that Mrs. Black was not a competent witness to prove that she did not sign the note or receive the proceeds thereof. Black v.

McCarley's Ex'or., 104 S. W., 987, 126 Ky., 825. Since the defendant testified to a number of statements made by the decedent, it cannot be doubted that this evidence was incompetent. It remains to determine whether or not he was competent to testify to what he saw and did in performing the different operations.

The question turns on whether or not the performance of an operation is a transaction within the meaning of the Code. The word "transaction," as used in a statute relating to the admissibility of evidence of transactions or communications with deceased persons, has often received judicial interpretation, and is held to mean every variety of affairs which forms the subject of negotiations or actions between the parties. Whitney v. Brown, 90 Pac., 277, 75 Kan., 678, 11 L. R. A. (N. S.), 468, 12 Ann. Cas., 768; 8 Words and Phrases, 7062; Holliday v. McKinne, 22 Fla., 153. It is also said, in substance, that a personal transaction or communication between a witness and the decedent embraces every variety of affairs which can form the subject of negotiations, interviews or actions between two persons, and includes every method by which one person can derive impressions or information from the conduct, condition, or language of another. Wilber v. Gillespie, 112 N. Y. Supp., 20, 127 App. Div., 604; Holcomb v. Holcomb, 95 N. Y., 316. It is accordingly held that a physician is incompetent to testify in his own behalf as to the number of visits he made to the deceased, what he did for him and how he relieved his suffering. Duggar v. Pitts, 39 South, 905, 145 Ala., 358, 8 Ann. Cas., 146. The ruling is based on the ground that the rendition of such service is a transaction within the meaning of the Code provision. To the same effect are the following authorities: Cash v. Kirkham, 67 Ark., 318, 55 S. W. Rep., 18; Ross v. Ross, 6 Hun. (N. Y.), 182; Garwood v. Schlichenmaier, 25 Tex. Civ. App., 176, 60 S. W. Rep., 573. See also Marmion v. McClellan, 11 App. Cas. (D. C.), 467; Boyd v. Cauthen, 28 S. Car., 72, 5 S. W. Rep., 170; Ross v. Ross, 6 Hun. (N. Y.), 182; Green's Admr. v. Teutschmann, 97 S. W., 7, Ky Law Rep., 1149. But it is suggested that the term "transaction" means a transaction participated in by two parties who were conscious at the time, and to which the decedent could testify if living, and does not apply to a transaction to which the decedent could not testify if living, be-

cause of the fact that he was under the influence of an anaesthetic at the time the transaction took place. If the word "contract" had been used in place of the word "transaction," there might be some merit in this contention, but under the broad meaning given to the term "transaction," and in the absence of any language in the Code so restricting its meaning, it is submitted that a transaction is none the less a transaction, within the meaning of the Code, because one of the participants was unconscious at the time. If the Code provision should be so construed, then a physician, or anyone else rendering services to a decedent, could testify on the question, just so the decedent happened to be unconscious when the services were performed. Such a construction would, in effect, annul the Code provision. We, therefore, conclude that an operation performed by a physician is a transaction within the meaning of the Code and that the defendant was not competent to testify to what he saw or did in the performance of the operation.

Error in the instructions is also relied on as a ground for reversal. Instruction No. 5 is as follows:

"The court instructs the jury that if they believe from the evidence that at the time of the operation upon the decedent, it was the professional custom or usage obtaining among good surgeons generally, and in the community where the operation upon Florence Barnett was performed, to secure the assistance of a trained and competent nurse, and to entrust to such nurse the duty of counting sponges or pads used in operations before and after the use of same, and to rely on the accuracy of the nurse's count, and that pursuant to such usage and custom, if any there was, the defendant did secure the assistance of a trained and competent nurse, and did entrust to her the duty of counting sponges or pads used in the operation before and after the use of same; and that defendant was assured by said nurse that all the sponges or pads were accounted for, and relied on such assurance, then the jury cannot find the defendant negligent by reason of the leaving of a sponge or pad in the body of the decedent."

In performing an operation it is the duty of a surgeon to exercise reasonable care and skill. The operation begins when the incision is made and ends when the opening has been closed in the proper way, after all

the appliances necessary to a successful operation have been removed from the body. Throughout the operation the law imposes on the surgeon the duty of exercising such care and skill. The removal of the sponges or pads is a part of the operation and an operation cannot be said to be concluded until such removal takes place. For this reason, it is generally held that a surgeon can not relieve himself from liability for injury to a patient by leaving a sponge in the wound after the operation, by any custom or rule requiring the attending nurse to count the sponges used and removed, accompanied by the statement of the nurse that the sponges were all properly accounted for, and his reliance on such statements. Davis v. Kerr, 239 Pa., 351, 86 Atl., 1007, 46 L. R. A. (N. S.), 611; Palmer v. Humiston, 87 Ohio St., 401, 101 N. E., 283, 45 L. R. A. (N. S.), 640. On the contrary, surgeons are generally held liable for injuries resulting from their leaving a gauze sponge in the abdominal cavity of the patient. Ruth v. Johnson, 96 C. C. A., 643, 172 Fed., 191; Gillettee v. Tucker, 67 Ohio St., 106, 93 Am. St. Rep., 639, 65 N. E., 643, 13 Am. Neg. Rep., 421; Samuels v. Willis, 133 Ky., 459, 118 S. W., 339, 19 Ann. Cas., 188; Reynolds v. Smith, 148 Iowa, 264, 127 N. W., 192; Harris v. Fall, 27 L. R. A. (N. S.), 1174, 100 C. C. A., 497, 177 Fed., 79. We, therefore, conclude that the above instruction is erroneous. We are of the opinion, however, that the custom in question and the defendant's reliance on the nurse's count are proper circumstances to be considered by the jury, in connection with the other facts attending the operation, in determining whether or not the defendant exercised reasonable care and skill in the performance of the operation.

The court also gave the following instruction:

"The court instructs you that there is no evidence in this case of any negligence, or want of care, upon the part of the defendant, unless it be the leaving in decedent's abdomen of the sponge or pad described in the evidence; and further, that you cannot find the defendant negligent upon this ground, if you further believe that the defendant, Dr. Brand, was assured by the nurse that all the sponges or pads were accounted for, and that at such time the defendant believed, and had reasonable grounds to believe, that the condition of the decedent made it imperative to close the incision in her abdomen.

without further delay and without verifying the statement of the nurse.''

The evidence shows that defendant was advised on Sunday that one of the pads was missing, and there was further expert evidence to the effect that, under such circumstances, it is the duty of the operating surgeon to remove the pads as promptly as possible. The pad was not removed until Tuesday, when the other gauze was removed. It is, therefore, insisted that that part of the instruction telling the jury that the only evidence of negligence was the leaving in decedent's abdomen of the pad or sponge is erroneous. This point, we think, is well taken, for, on being apprised that one of the pads was missing, it was the duty of the defendant to open the incision, explore for the pad and promptly remove it, provided this could be done without endangering the life of the decedent. However, in this connection, we deem it proper to say that, in order to authorize a recovery, it is not sufficient to show that the defendant, in leaving the pad in decedent's abdomen, or in failing promptly to remove it, if this could be done without endangering the life of the decedent, failed to exercise reasonable care and skill, but it must further appear that such failure, if any, was the proximate cause of the decedent's death. Manifestly, if the condition of the patient was such that death would have ensued, notwithstanding the presence of the pad in her abdomen, there should be no recovery.

We also conclude that on another trial the court, in lieu of instruction No. 6, should tell the jury, in substance, that if they believe from the evidence that the defendant believed, and had reasonable grounds to believe, that the condition of the decedent was such that further delay in exploring for pads and sponges, or in closing the operation, would endanger her safety, the defendant was not negligent in then leaving the pad or sponge in the decedent's abdomen, and they cannot find for plaintiff on that ground.

In view of the above errors, we conclude that plaintiff is entitled to another trial. No other questions are passed on.

Judgment reversed and cause remanded for a new trial consistent with this opinion.

Whole court sitting.