### No. 2293
### Second Circuit Appeal

---

## MRS. MARGERY M. ROARK ET AL. v. DR. J. I. PETERS ET AL.

(June 30, 1925, Opinion and Decree)
(July 11, 1925, Rehearing Refused)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Physicians—Par. 5.**

Where the physician operating on a patient left a sponge in the abdomen which caused pain and suffering until it was discovered and removed by another physician, the fact that this sponge was left in the abdomen did not constitute negligence per se. The evidence showed that the physicians and nurses used due and proper care and diligence during the operation and after, thus precluding a recovery for damages against them.

2. **Louisiana Digest—Negligence—Par. 41; Evidence—Par. 53, 59, 60.**

The absence of evidence that the sponge did not have tape attached to it does not discharge the plaintiff of the burden of proof that physicians were negligent. She has failed to prove negligence on the part of physicians.

(Civil Code, Art. 2315. Editor's note.)

ON APPLICATION FOR A REHEARING.

1. **Louisiana Digest—Pleading—Par. 62; Negligence—Par. 38, 39.**

Allegations in a petition that the injury was due to gross fault, carelessness, and negligence of a physician and the nurses, employees and representatives of a hospital, but do not point out any specific account of negligence of the nurses, employees or representatives are not sufficient to support a demand for damages against those in charge of the hospital and therefore, an exception no cause of action will be sustained.

Appeal from Thirteenth Judicial District Court of Louisiana, Parish of Rapides. Hon. John A. Williams, Judge. Hon. Leven L. Hooe, Judge.

This is a suit to recover damages for pain and suffering and impairment of health caused by alleged negligence of physician and nurses in an operation. The court sustained exceptions no cause of action to plaintiff's demand against all of the defendants except Dr. Peters, and on trial of the case rejected their demands in toto.

Plaintiffs appealed.

Judgment affirmed.

B. T. Dawkins, of Alexandria, attorney for plaintiffs, appellants.

Overton & Hunter, of Alexandria, attorneys for defendants, appellees.

ODOM, J. The plaintiff, Mrs. Margery M. Roark, who expected soon to be a mother for the first time, went to the city of Alexandria to be confined. Upon the advice of relatives and friends she sought and procured the services of Doctor J. I. Peters to attend her during this period. Doctor Peters visited her during period of delivery and made such examinations and administered such treatment as was necessary.

On the evening of February 19, 1922, Mrs. Roark, the plaintiff, who was then at the home of her sister, Mrs. Thompson, suffered a severe hemorrhage. Doctor Peters was sent for hurriedly and when he arrived he found plaintiff lying on the bathroom floor in a pool of blood. He made an examination of the patient and reported to the members of her family that she was in a critical condition and asked that another physician be called in consultation, whereupon Doctor G. M. G. Stafford was called. It was decided that in order to save the life of the patient the child should be delivered at once, and Mrs. Roark was carried to the Baptist Hospital in an ambulance. The physicians decided that a Caesarean section operation offered the safest method of delivery both for the mother and the child. It seems that this conclusion was communicated to the relatives, who agreed to it, and that thereupon two other physicians—Doctor Rand and Doctor Anthony—were called in to assist in the operation. In addition to these four physicians there were three nurses—Miss Jane Yates, supervisor of the operating room, Miss Cleve and Miss Poe, hospital nurses—in the room assisting in the operation. The operation was performed by Doctor Peters, but, as stated, assisted by the other physicians and the nurses. Both the mother and the child were saved.

After the operation the plaintiff did not recover rapidly. She suffered from severe pains in the abdomen; at times was troubled with constipation and at times with dysentery; she could not straighten her body without pain.

Doctor Peters continued to attend her but failed to discover the cause of the trouble.

After several months she went to relatives in Mississippi where a physician was called. This physician examined her and concluded that there was something seri-

ously wrong and the patient was carried to a hospital in Memphis where Doctor J. A. Crisler, an eminent specialist of that place, examined her and finally, with the assistance of Doctor Vaughn, he performed an operation and found in and removed from· her abdomen a large lap or towel sponge which had been left there by Doctor Peters at the time he performed the operation at Alexandria.

The patient rapidly regained her health and has recovered.

She brings this suit against Doctor Peters and his partner, Doctor Anthony, and against the Baptist Hospital for damages for pain and suffering and impairment of her health, expenses, etc., and she alleges that her condition subsequent to the operation was caused solely by the presence of the sponge in her abdomen; and she alleges that in leaving said sponge in her abdomen Doctor Peters was grossly careless and negligent; and further, that the hospital nurses were grossly careless and negligent and that the hospital is therefore liable with Doctor Peters for her injury.

The court sustained exceptions of no cause of action to plaintiff's demand against all the defendants except Doctor Peters, and upon trial the court rejected her demand in toto. She has appealed.

## OPINION

The major act of negligence which plaintiff charges against Doctor Peters and the nurses is that her wound was closed without removing the sponge. This, it is contended, was negligence *per se*. But even if it be conceded that the closing of the wound by the operating surgeon without removing the sponge was negligence *per se* it does not necessarily follow that a physician who fails to remove a sponge or a tube from a wound made by the operation is guilty of such negligence or carelessness as to make him liable in damages for the injuries resulting therefrom.

The question in this case is not whether Doctor Peters was careless in leaving the sponge in Mrs. Roark's abdomen, because it may be conceded that he was guilty of a degree of negligence in doing so; but the question is whether he used that degree of care and caution in removing the sponge and checking them up and having them accounted for previous to the closing of the wound which is required of surgeons in such cases.

Physicians are human and therefore are not perfect. They are liable to err. They are not infallible. It is too much to expect that an ordinary human being will not make mistakes.

"A physician or surgeon undertaking the treatment of a patient is not required to exercise the highest degree of skill possible. He is only required to possess and exercise that degree of skill and learning ordinarily possessed and exercised by the members of his profession in good standing practicing in similar localities and it is his duty to use reasonable care and diligence in the exercise of his skill and the application of his learning and to act according to his best judgment." 30 Cyc. 1507.

The above is a correct statement of the rule with reference to the degree of learning and skill which must be possessed and exercised by physicians and surgeons.

But in a case like the one under consideration, it is not a question whether Doctor Peters possessed and exercised the required degree of skill and learning, for it takes no learning to dictate the necessity of removing a sponge from the patient's body after an operation. He is not charged with lack of skill but he is charged with negligence in failing to remove the sponge. But the above rule is illustrative of the point in this case. That

rule requires that a physician or surgeon use reasonable care and diligence in the exercise of his skill and the application of his learning. Not the highest skill possible *but reasonable care and skill.*

. So it is with reference to the point in the instant case. Doctor Peters was expected to exercise *reasonable care and diligence.* Plaintiff had a right to expect of him reasonable care and diligence and not perfection. Therefore, even if he did leave a sponge in her body, if he exercised that degree of care, diligence and prudence in checking and accounting for the sponges prior to the closing of the wound, which is reasonable and in accordance with the rules and methods practiced by the members of his profession in good standing, plaintiff had no ground to complain.

In the case of Sasingham vs. Berry, 150 Pac. Rep. 139, the Supreme Court of Oklahoma said:

"It is a matter of common knowledge, based upon everyday experience, that even in the exercise of the utmost care all men do make mistakes. And it was not error, under the pleadings and evidence in this case, for the court to instruct the jury that, though they believe the defendant left sponges in the body of the deceased, and her death was the natural and proximate result thereof, yet if they also believe from the evidence that the defendant in performing this operation exercised ordinary care in keeping track of the sponges, and seeing to it that they were all removed, before the incision was closed, he could not be held liable for negligence. The basis and gist of this action was not the result of the operation, but negligence in the performance of it. If there was no negligence in the performance of the operation, then there was no cause of action and could be no recovery; if there was negligence in the performance of the operation, then a recovery could be had. Whether or not the defendant exercised that degree of care in performing the operation that the law imposed upon him was the paramount question and the test of the rights of the parties."

The above language was used in a case where the following charge was requested.

"Common sense dictates that leaving the sponges in the abdominal cavity is absolutely and totally inconsistent with the exercise of ordinary care."

The court refused to sanction this charge to the jury.

In the case of Ewing vs. Goode, 78 Fed. 442, Justice Taft made use of the following language:

"A physician is not a warrantor of cures. If the main '*Res ipsa loquitor*' were applicable to a case like this, and a failure to cure were held to be evidence, however slight, of negligence on the part of the physician or surgeon causing the bad result, few would be courageous enough to practice the healing art, for they would have to assume financial liability for nearly all the 'ills that flesh is heir to.'"

Judge Taft did not have before him a "sponge case" involving a surgeon's neglect to remove a sponge before closing the wound, but the doctrine announced by him is illustrative of the point raised in the case at bar. If the bare fact of leaving a sponge in the patient's abdomen were sufficient evidence of negligence on the part of the surgeon to warrant recovery by the patient in a case like this there would be few who would be willing to perform an operation, for, as stated in the Oklahoma case, supra, even in the exercise of the utmost care all men do make mistakes.

Plaintiff has cited a long list of authorities from the high courts of all sections of the country, which we have read and considered with the utmost interest; but none of them hold that a physician or surgeon is required to exercise more than ordinary care in checking and accounting for the sponges before closing the wound,

In the case of Barnett's Adm'r vs. Brand, 177 S. W. 461 it was held that a surgeon should exercise reasonable care and skill in the removal of gauze pads necessary to a successful operation, and may not relieve himself from liability for leaving a pad in the wound by any custom requiring attendant nurses to count those used and removed.

See, also, to the same effect:

Davis vs. Kerr, 86 Atl. 1007 (46 L. R. A. N. S. 611).

In the case of Evans vs. Munto, 83 Atl. 82, it was held that in an action against a surgeon for negligence, proof that a drain was left in a wound and allowed to remain there after the wound had healed, the burden was on defendant to show that its presence was not due to his negligence.

In the case of Samuels vs. Willis, 118 S. W. 339 (19 Ann. Cases 188) it was held that where in an action based on negligence of a physician in leaving a sponge in the abdomen after an operation, the question whether he exercised proper care was still for the jury, since, because all men are at some time careless, does not relieve one from legal consequences of his careless act.

In the case of Arkridge vs. Noble, 114 Ga. 942, it was held that the removal of sponges is a part of the operation, a part which requires the exercise of skill.

In the case of Pare vs. Carter, 188 N. W. 68, a Wisconsin case, it was held that a surgeon's duty of exercising due care to see that no packing is left in the abdomen of one operated on is not conclusively shown by evidence that he followed the usual practice and custom among skilled practitioners of relying on count by the nurses.

The plaintiff cites these decisions and many more. They illustrate the points stressed by counsel but they are in no wise at variance with the general rule that a physician or surgeon is held to no more than ordinary and reasonable care and diligence in keeping track of and accounting for all sponges used in the operation, and that nothing more than reasonable care and skill are required of him in seeing that all sponges, etc., are removed before the wound is closed. The decisions hold that the physician must not rely conclusively upon the count and checking of the sponges by the nurses. He must personally use his own skill and exercise his own faculties in accounting for them.

The question whether due and reasonable care and prudence have been exercised by the physician or surgeon is one to be found by the jury or the court and each case must be determined according to the facts and circumstances surrounding it.

In the case at bar the point for the court to determine is whether the operating physician and the nurses who were supplied by the sanitarium where the patient was operated on used due and proper care and diligence.

There were seven people—four doctors and three nurses—who witnessed the operation. The four physicians and one of the nurses testify as witnesses and there is but little difference in their versions of what transpired.

Doctor Peters, the defendant, testified about the operation in detail and after concluding his minute description of it, he says, with reference to the sponges:

"At this stage of the operation we are ready to remove the sponges and other appliances used in conducting the operation, which were introduced into the wound itself. The sponges were all removed, the large ones especially being looked for. The little ones were scattered over the

operating room floor, about the table. As many sponges, referring to the large ones, or laparotomy sponges as were used were removed from the wound insofar as it was possible to determine by inspection, exploration and so-called feeling around or probing of the cavity of the abdomen and pelvis. It should be remembered that we have a great deal of loose space in the abdomen, an amount corresponding to that which was previously occupied by the child, the afterbirth or placenta and its membranes, and the ammotic fluid and the amount of blood that flows out, the latter, however, being the least consideration in the volume. The fact of the amount of space necessary to explore makes it necessary to go over the various recesses and amidst the cause of the intestines, and into the recesses of the pelvis and abdomen in search of the sponges employed. All this was done as carefully and as thoroughly as we ever do in exercising care to prevent a sponge being left. After having satisfied myself that no sponges had been left, the nurse was asked for a counting and accounting of the sponges, as a check against our conclusions that none had been left. After satisfying myself that no large sponges had been left and after having assurance from the nurse that she had checked the sponges and none had been left, and that all were accounted for, that had been used, we proceeded to close the wound. The wound, however, was not closed for an interruption was indulged in while the supervisor and unsterile nurse counted the little sponges which they were doing. They were slow accounting for the little sponges and we requested an accounting for the little sponges. l was told that a little sponge was missing, meaning a small one, meaning a sponge which isn't a laparotomy sponge; whereupon we suspended procedure in the operation pending an account for the small sponge. At this time the patient's condition was extremely grave, even critical. Her condition was not good. The doctor had stopped the anaesthesia, or was giving very light anaesthesia, realizing that any other course was hazardous, and the patient showed signs of reacting, whereupon we instructed the anaesthetitst, who was Dr. P. K. Rand, to resume the anaesthesia in order that we might further explore for the missing small sponge, if necessary. My assistant and consultant, Dr. Stafford, expressed himself that no small sponge was used, and that expression was agreed to as being in conformity with my opinion in the matter, but that we would not complete the operation and close the abdomen further without a general exploration for this missing, small sponge, if the same was not found. The condition of the patient was such that any exploration or trementish or manipulation or delay was to be avoided, if possible."

And he was asked:

"Q. Did I understand you to say that after you had performed the operation that you removed all the sponges that were visible to the eye or touch?"

And he answered:

"A. I did, and all that could be found by reason of exploration."

And he was asked if, after making an individual search and exploration for sponges he then required the nurses to count and recheck the sponges and he said:

"A. We did and we never finished the operation until it had been done."

He testified, and the physician administering the anaesthesia also testified, that the operation was held up for fifteen or twenty minutes pending a search for a missing sponge and that the wound was not closed until it was found.

Doctor G. C. Anthony testified that he did not personally look for the sponges as he was assigned to look after the baby, but he recalled the report that a small sponge was missing and that the operation was suspended until it was found. He says that the custom at the Baptist Hospital is that the operating surgeon removes all sponges visible or which can be detected by touch and then to call on the sponge nurse for a count and check, and if her check accounted for all of them

that is accepted as final. He says that in this particular case everybody in the room joined in the search for the missing sponge. He says that Doctor Peters announced that he would open the abdomen if the missing sponge was not found.

According to all the testimony, a nurse finally announced that she had found the sponge and then the wound was closed.

Doctor K. P. Rand only administered the anaesthesia and did not look after the sponges, but he recalls that before the closing of the wound there was a check and count of the sponges and one was found to be missing, and that the operation was suspended until it was found, a period of some fifteen or twenty minutes. He says that during that time some three or four nurses were counting and hunting for sponges.

Doctor G. M. G. Stafford, who was called in as consulting physician and who assisted in the operation, testified that he was present during all the time and assisted Doctor Peters and was asked to detail what Doctor Peters did with reference to the sponges, and he said:

"Well, when the patient had been anaesthetized and prepared for operation the abdomen was opened. The intestines and the cavity were walled off with sponges, the uterus was delivered and opened. The baby and placenta delivered therefrom. The incision in the uterus was closed and I held the wound in the abdomen open while Dr. Peters searched for and removed the sponges that were in the field of operation. When he had removed all that he could see or feel, he told the nurse that he was ready to close up and wanted to know how the sponges checked. The nurse answered that all the lap sponges were accounted for, and I don't know whether it was right at that moment or a moment afterwards, she said: 'But there is a small sponge missing.' Dr. Peters then remarked to Dr. Rand, who was giving the anaesthetic: 'Doctor, keep your patient under the anaesthetic until this sponge is accounted for.' I remember remarking at the time that I wasn't worried about the small sponge because I knew none had been used in the abdominal cavity. Doctor Peters then told the nurse again; he said: 'Find that sponge, I am not going to let this patient leave the table until you find it.' In a few moments, I don't know what length of time, but a very short while, she said: 'Thank God, here it is, we have found it.' We then being satisfied closed the abdomen and sent the patient to her room."

Miss Jane Yates, supervising nurse, was present during the operation and was asked about the sponges and whether or not she examined them at the time they were brought into the operating room, and she said:

"Well, I counted them as they were undone from the packages."

And she said further that the lap sponges and all others were checked, and she was asked:

"Did you count and account for all of the sponges, both large and small, that had been used by Dr. Peters in the Roark operation?"

And she said:

"Yes, sir."

And she further testified that she reported to Dr. Peters before the operation was closed that all the sponges were found and accounted for.

With reference to the count of the sponges, she says that before the operation the sponges were brought in in packages and laid on a table and the packages were opened, when she counted the number in each package, and that after the operation and just prior to its completion the number of sponges that remained on the table were counted, as well as those which had been used and thrown into the bucket, and that the total of those not used and those used checked with the number taken

out of the packages originally. She said that she counted both the used and the unused sponges and that they checked.

From all of the above testimony it appears that Doctor Peters used due care and diligence in the removal of the sponges. He did not rely on the count of the sponges by the nurses. He used those precautions ordinarily used by competent skillful surgeons. He exercised his own faculties. He removed all the sponges that were visible and all that he could find by exploring the wound and the patient's abdomen.

The testimony of Doctor Stafford makes that point perfectly clear.

That very eminent surgeon, Doctor J. A. Crisler, of Memphis, who removed the sponge from plaintiff's abdomen, was asked:

"Where a proper search is made by the surgeon in charge for sponges, would it be likely, or probable, that he would fail to detect a lap, or towel sponge?"

And he answered:

"Yes; it is entirely possible for him to make a reasonable search for it and overlook it, because the pelvis and abdomen contain a good deal of space, in which there are numerous coils of intestine, and it is entirely possible for so large a sponge as a towel sponge to get away from you and not be where you really put it; and, therefore, might crawl or be moved from where you put it into a very remote part of the abdomen, or pelvis; and unless a very exhaustive search was made you might overlook it. That is why we depend so largely upon the after checking of the sponge nurse."

Counsel for plaintiff urges that it was negligence for the surgeon and nurses to use sponges without tapes. The best authorities state that all sponges used in operations of this kind should have tape attached to them, but we think it cannot be said that it is negligence *per se* to use sponges without tape. However that may be, the testimony in this case on that point is that all lap sponges used at the hospital where the patient was operated on have tape attached to them.

Miss Yates, the head nurse, was the only witness interrogated on this point, and she made it perfectly clear that tape was attached to all lap sponges. There is nothing in the record to show whether the particular sponge removed from the patient's body by Doctor Crisler in Memphis had attached to it tape or not, and therefore in the absence of other testimony on the point we must accept that of Miss Yates and conclude that there was tape attached to those used by Doctor Peters.

Counsel for plaintiff also cites the fact that Miss Yates, who counted and assisted in checking the sponges, was not sterile and says that was negligence.

We see no force in that suggestion in this case.

If Doctor Peters had used an unsterile nurse in the operation and the patient had become infected and that had been the basis of the suit, plaintiff would have cause to complain; but we see no reason why an unsterile nurse should not be as capable of counting and checking sponges as a sterile one.

As a second "major act of negligence" plaintiff cites the fact that Doctor Peters attended the plaintiff after the operation and failed and neglected to discover the presence of the sponge in her abdomen and that his failure was due to lack of skill and the negligence.

As a precaution, Doctor Peters had Mrs. Roark return to the hospital and had Doctor J. H. Cooper, a radiologist, make an X-ray examination of her abdomen. Doctor Cooper also made physical examinations and passed a "barium meal" through her intestinal tract and found no evidence

of any obstruction or of the presence of the sponge.

Several physicians were called, all of whom approved his course of treatment.

In the case of Gouner vs. Brosnan, 155 La. 1, 98 South. 681, the court said:

"The burden is upon the plaintiff to establish by a fair preponderance of the evidence the allegations of his petition charging Doctor Brosnan with 'negligence, carelessness, want of skill and malpractice,' in the methods he employed and in the manner he treated plaintiff's wound."

The plaintiff has not discharged that burden.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be affirmed with costs.

CARVER, J., dissents.

## REHEARING OPINION

REYNOLDS, J.    Plaintiffs, appellants, ask for a rehearing on three grounds

### I.

That the court erred in holding that—

"The question in this case is not whether Doctor Peters was careless in leaving the sponge in Mrs. Roark's abdomen because it may be conceded that he was guilty of a degree of negligence in doing so, but the question is, whether he used that degree of care and caution in removing the sponges and checking them up and having them accounted for previous to the closing of the wound which is required of surgeons in such cases."

And in still refusing to give judgment for plaintiffs.

By the above quoted language we did not intend to indicate that Doctor Peters was guilty of any actionable negligence but only intended to admit, to express it in other language, that Doctor Peters is human and not above the frailties of an educated, trained, efficient surgeon.

### II.

On the ground that the cases of Casing-ham vs. Berry, and Ewing vs. Goode, cited in support of our opinion, are not in accord with the established jurisprudence of these United States.

We think these decisions are in accord with Gouner vs. Brosman, 156 La. 1. South. the latest expression of our own Supreme Court touching the liability of physicians or surgeons who are alleged to have erred in their treatment of their patients.

### III.

That we erred in failing to pass upon the ruling of the lower court sustaining the exception of no cause or right of action filed on behalf of the Executive Board of the Louisiana Baptist Convention, one of the defendants.

In our opinion the ruling of the District Court sustaining the exception of no cause or right of action was correct.

There is no allegation in plaintiff's petitition that the Executive Board of the Louisiana Baptist Convention failed to employ competent, trained nurses, or failed to provide suitable operating rooms, or that the hospital failed to discharge any other duty required of it as a hospital.

The blanket allegation that the injury complained of was due solely and entirely to the gross fault, carelessness and negligence of the said James I. Peters and the nurses, employees and representatives of the said hospital, without in any way pointing out any specific act of negligence on the part of the nurses, employees or representatives or designating in what way, if at all, any of said nurses, employees or representatives was negligent in the discharge of their duties, is not an allegation of fact sufficient to support a demand for damages against the Executive Board of the Louisiana Baptist Convention.

For the above reasons, a rehearing is refused.