Samuel S. Christopher, Edith Christopher, Executrix of Last Will and Testament of Samuel S. Christopher, Deceased, Plaintiff-Appellee, v. George E. West, Corrine I. Zick, Executrix of Will of George E. West, Deceased, Defendant-Appellant.

Gen. No. 9,653.

Opinion filed January 24, 1952. Rehearing denied March 21, 1952. Released for publication March 21, 1952.

GILLESPIE, BURKE & GILLESPIE, of Springfield, and STONE & HESS, of Bloomington, for appellant.

A. M. FITZGERALD, of Springfield, for appellee.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

This is an appeal from a judgment in the circuit court of Sangamon county in an action at law brought by plaintiff-appellee against the defendant-appellant, wherein plaintiff recovered judgment on directed verdict in the amount of $4,061.47, plus interest, being the amount of his down payment, under contract, for the purchase of real estate located in Iroquois county, Illinois.

The death of Samuel S. Christopher, plaintiff-appellee, has been suggested and motion has been allowed to substitute in his stead, Edith Christopher, executrix of the last will and testament of Samuel S. Christopher, deceased.

The death of George E. West, defendant-appellant, has been suggested and motion allowed to substitute in his stead Corrine I. Zick, executrix of the will of George E. West, deceased.

This cause was passed upon by this court at the October Term, 1949, and from the decision of this court, Edith Christopher, as executrix of the last will and testament of Samuel S. Christopher, deceased, appealed to the Supreme Court. The Supreme Court reversed the decision of this court and remanded the cause to this court with instructions to consider and pass on the assigned errors remaining undetermined. (*Christopher v. West*, 409 Ill. 131.) The cause therefore comes back to this court for decision on those matters not passed upon by the Supreme Court.

The contract upon which the action is based was executed by the parties on February 22, 1946, in Ford county, where the real estate in question was sold at public auction, the material parts of the contract being as follows:

"If the second party shall first make the payments and perform the covenants hereinafter mentioned on his part to be made and performed, the said first party hereby covenants and agrees to convey and assign to the second party in fee simple by good and sufficient warranty deed (the real estate in question), and the said party of the second part hereby covenants and agrees to pay to the said party of the first part the sum of $27,076.50 in the following manner: $4,061.47 on this date and the balance on or before 90 days from this date . . . and in case of failure of said party of the second part to make either of the payments . . . this contract shall at the option of the party of the first part be forfeited and determined and the party of the second part shall forfeit all improvements and payments made by him on this contract . . ."

"The first party agrees to furnish an abstract showing title to said real estate in accordance with this contract and allow second party reasonable time to have same examined and thereafter first party shall

within a reasonable time correct defects, if any, and shall make such abstract show a merchantable title . . . It is mutually agreed by and between the parties hereto that the time of payment shall be the essence of this contract . . ."

Plaintiff apparently took possession of the premises on or about March 1, 1946, which possession does not appear to have been disturbed at any time thereafter.

On or about May 15, 1946, plaintiff received at his home in Sangamon county an abstract of title to the real estate in question certified to May 8, 1946. Defendant testified, and there was no evidence to the contrary, that the abstract was mailed from Ford county, in accordance with plaintiff's instructions and was addressed to an agent of plaintiff in Sangamon county who delivered it to him.

On or about May 18, plaintiff's attorney rendered to him a preliminary written opinion on the merchantability of the title, wherein objection was raised that the abstract failed to show the following:

1. That notice of petition to probate the will of Logan A. Gridley, a predecessor in title of defendant's, had been given to decedent's heirs, legatees and devisees.

2. That the First National Bank of Chicago was the successor of the First Trust & Savings Bank, devisee and trustee under the will of said Gridley.

3. That the First National Bank of Chicago, as successor-trustee, had power or authority under the power of sale granted in the Gridley will, to effect, by exchange or quitclaim deeds, a voluntary partition of the real estate here in question which together with other land, was held, as tenants in common, by said trustee and one Mary Gridley Bell, defendant's immediate predecessor in title, with the result that title to the undivided one-half of the real estate in question,

which the trustee so purported to convey to said Mary Gridley Bell, remained of record in the trustee.

On or about May 20th, 1946, plaintiff's attorney mailed a copy of this opinion from Springfield, addressed to defendant in Ford county. It appears that the latter was critically ill at the time and upon receipt of the copy of the opinion turned it over to his brother, Frank H. West, authorizing him to act as his agent in regard to the transaction. The brother went on May 22nd or 23rd, 1946, to the office of plaintiff's attorney in Springfield, and there discussed at some length with him the objections raised. There is some indication in his testimony that the brother, prior to this conference, had taken up with Attorney J. H. Benjamin (who had passed on the title for the defendant), about the objections raised and had already made arrangements for obtaining the proof required in the first objection.

In any event, it appears a fair inference from the testimony that means of obviating the first two objections were at least tentatively agreed upon at the conference in the office of the plaintiff's attorney.

It does not appear that any agreement was reached on the third objection, and the defendant's brother testified that plaintiff's attorney said that it was not his business to outline the cure but that it was for the former and his attorney to find something that would satisfy the latter.

It appears that defendant's brother did not put the matter of obviating the objections into the hands of an attorney, but that immediately thereafter he actively sought the assistance of a considerable number of lawyers who had been connected in one way or another with the transfer objected to.

The lawyers so consulted included the trust officer of, and the attorney for the personal representative of the estate of Mary Gridley Bell, deceased, who had been

519

one of the parties to the purported partition; one or more trust officers of the First National Bank of Chicago; the lawyer then engaged in private practice who had been trust officer of the latter bank at the time of the exchange objected to, and the lawyer who had passed on the title for defendant.

Out of these conferences came a number of suggestions as to the steps which might be taken to remedy the matter. An offer of the First National Bank of Chicago, made in the latter part of May 1946, to join in the sale of plaintiff for a recited consideration of $10 was refused at the outset by the attorney for plaintiff. Mr. Emerson Lewis, trust officer of the Chicago bank at the time of the partition, tried to convince plaintiff's attorney by letter and by informal conference that the trustee in fact had power to effect the voluntary partition and that the title was merchantable. In the trial of the cause, the trial court excluded attempts of defendant to further prove that his brother communicated to plaintiff's attorney, offers to obviate the objection by showing of record the circumstances of partition or to obtain confirmation of the partition by the beneficiaries of the trust. Defendant's brother was allowed to testify however, that he "did not fail to do anything that any lawyer or any person suggested to be done to cure this third defect."

While substantially all of these transactions, including the conference between defendant's brother and plaintiff's attorney, took place after the closing date specified in the contract, it does not appear that there was any specific recognition of this fact by the parties, and it seems obvious that the efforts made on both sides were directed toward completing the transaction.

On July 2nd, 1946, plaintiff's attorney, by letter to Mr. Emerson Lewis, which was admitted in evidence, stated that he had:

520

"finally concluded that the only practical method to cure the present defects in the title under discussion is for the Bloomington bank, as executor of, and trustee under the will of Mary Gridley Bell, deceased, to file a suit for partition in the Circuit Court of Iroquois County alleging, among other things, that the deeds by and to the First National Bank of Chicago were ineffectual to convey title, ask that they be set aside and cancelled as clouds on the title, and for partition. The decree for partition will appoint three commissioners to make division and no doubt they will arrange to divide the land between the two banks as was attempted by the two quit claim deeds. Their report of of such division, when confirmed by the Circuit Court will operate to vest title properly in the two banks respectively, after which each can proceed to convey as previously done."

Such attorney advised in the same letter that plaintiff desired to rescind the agreement, and by registered letter of the same date, July 2nd, 1946, wrote to defendant that he had elected to rescind on the ground that "more than a reasonable time (had) elapsed and the title (had) not been made merchantable and (could) not be made so within a reasonable time." The letter demanded return to him of the down payment with interest thereon at 4%.

Shortly thereafter defendant's brother engaged present counsel to pursue the matter further and, while considerable correspondence followed with plaintiff's attorney, the plaintiff continued his insistence upon his right to rescind.

On August 13, 1946, defendant commenced proceedings in the circuit court of Iroquois county against plaintiff, and all other parties who might have an interest, to quiet title and for specific performance, by plaintiff, of the contract here in question. All defend-

ants except plaintiff and those served by publication, answered, disclaiming any interest, while plaintiff resisted the action of specific performance. For reasons not apparent in the record, Christopher was dismissed out of the case on West's motion and decree was entered confirming title in West on November 15, 1946. On November 22, 1946, defendant and his counsel tendered to plaintiff and his counsel in the latter's office in Springfield the abstract of title to the property in question certified to November 18, 1946, and containing an abstract of the above proceedings. There was also tendered at this time a warranty deed of West and his wife conveying the real estate in question to Christopher.

It appears that at this meeting plaintiff's counsel briefly examined the abstract and stated that whether the title was merchantable or not, he declined to accept the deed or abstract on the ground that neither was tendered at the time or in the manner required by contract and on the further ground that the title was not merchantable.

In entering judgment for plaintiff the trial court found "the issues for the plaintiff on the question of merchantability of title and that the plaintiff elected to rescind the contract and rescinded it on July 2, 1946, having allowed the defendant a reasonable time within which to correct objections made by the plaintiff and having in mind the evidence in the case, the time within which any such corrections might have been final so as to show merchantable title in the defendant" and further found plaintiff entitled to recover the down payment.

The prior decision of this court on the issues in this cause, related only to the necessity of tender of the purchase price by the plaintiff as a prerequisite of suit, holding that that question was the pertinent and controlling question in the case. Following that line of

reasoning, this court held in the prior decision that "inasmuch as the time fixed for performance in the contract has expired, it was a pre-requisite to plaintiff's right to institute suit, that he tender full payment of the balance of the purchase price and demand performance by defendant within a reasonable time. That not having done so, his right of action had not matured and he cannot recover in this case."

From that opinion, the plaintiff appealed to the Supreme Court, and that court in passing on the question, held that it was limited in its decision to the sole question decided by this court, namely the necessity of tender by the plaintiff as a prerequisite of suit, and reversed the decision of this court and remanded it back to this court, with instructions to pass upon the other matters assigned as error by the defendant-appellant. In reversing the decision of this court the Supreme Court said:

"Under the agreement, West was obligated to convey fee-simple title by warranty deed. He contracted only to deliver an abstract of title to afford the purchaser an opportunity to ascertain the condition of the title and to enable the seller to correct any defects therein within a reasonable time. Payment was to be made, it is true, within ninety days, and time was declared, by the contract, to be of the essence thereof. Christopher erroneously construes the contract as though West had agreed to deliver an abstract showing merchantable title within the time fixed for payment. An analysis of the contract discloses this was not the expressed agreement of the parties. West under the terms thereof was to warrant only that title the abstract ultimately had to show, namely, a merchantable title. Such title need not necessarily be a perfect record title without fault, defect or omission. Differences of opinion as to the merchantability may, and frequently do, arise among attorneys astute in title matters; but whenever

the abstract, together with explanatory affidavits, evidences an indefeasible title in fee simple, whether had by deed, devise or by the Statute of Limitations, there is a merchantable title. *Bedinger v. May,* 323 Ill. 187."

And the Supreme Court further said: "Aside from the question of merchantability or non-merchantability of this particular title at the time the same was raised by the 'preliminary' opinion of Christopher, and even assuming the objections were well taken, West still had a right to be definitely advised as to their nature and whether or not the purchaser desired to waive some or even all of the objections, as he had a right to do. Under the circumstances here, neither party made a tender of performance within the ninety-day period set for the payment of the full purchase price, and such non-action constituted a waiver and a mutual negation of the requirement that time of payment as specified thereunder was of the essence of the agreement. Acts and statements of the two show they both considered the agreement to have otherwise retained all of its vitality subsequent to that date, and that the transaction was to be fully closed within a reasonable time thereafter. The purported letter of rescission of July 2 at least confirmed West in the belief the defects complained of were of sufficient import to cause the purchaser to refuse title if the same were not cured. He immediately, or at least within a reasonable time, proceeded to correct these defects by bill to quiet title, and accomplished this result as soon thereafter as could reasonably be expected."

Then the Supreme Court in concluding said: "The questions of venue and merchantability are not before this court on appeal. The only question for us here to decide is whether the law imposed upon Christopher, as a necessary condition precedent to the maintenance of this suit to recover back the earnest money paid, the duty of tendering performance to West in order

to acquire the right of restitution. The party who insists upon performance by the other party must show performance on his part, while he who desires to rescind the contract need only show non-performance or inability to perform by the other. Inability to perform is sufficient excuse on the part of the purchaser for not tendering performance, for, in this event, a tender would be devoid of meaning . . . If Christopher, on July 2, at the time of the attempted rescission had a right to rescind and was correct in his position as to any of the claimed defects in title, tender of performance by him then would be meaningless, for West on that date could produce no better abstract than the one he delievered to the purchaser on May 15. If any claimed defect was such as to affect the merchantability of the title, and one which was not cured or curable within a reasonable time as provided in the contract, no tender of the full purchase price was necessary. On the other hand, if the same was not material or was curable within a reasonable time, Christopher had no correct basis in law for a rescission of the contract. The case, therefore, turns upon considerations other than that of tender by Christopher and the holding of the Appellate Court, that such tender of performance was necessary before this suit could be instituted, was erroneous.''

The decision of the Supreme Court (*Christopher v. West*, 409 Ill. 131), disposes of error No. 4 relied upon by the appellant which charged that the trial court erred in striking the second defense of the defendant, that defense being that no tender was made by the plaintiff on the balance of the purchase price.

Of the twenty-eight errors assigned, Nos. 1, 5, 6 and 8 all relate to the same matter, namely the contention on the part of the defendant that there was no proper venue. The defendant contended in the trial court and assigns as error here, that the land was in Iroquois

525

county, the defendant lived in Iroquois county, that all acts of the parties under the contract were performed either in the county of Ford or the county of Iroquois, and that no part of the transaction out of which the alleged cause of action arose, occurred in Sangamon county, where the trial was instituted and had. The defendant raised this question by special appearance and by motion to dismiss. The plaintiff's theory was that the "transaction or some part thereof, . . . out of which the cause of action arose" occurred in the county of Sangamon.

The Venue Act, chapter 110, section 131, Illinois Revised Statutes, 1945 [Jones Ill. Stats. Ann. 104.007] provides: "Except as otherwise provided in this Act, every civil action shall be commenced in the county where one or more defendants reside, *or in which the transaction or some part thereof occurred out of which the cause of action arose.*" The facts here are not in dispute but only the application of the facts to the question of venue. The defendant did not live in Sangamon county but lived in Iroquois county. The plaintiff lived in Sangamon county but most of the transactions concerning the abstract of title occurred in the City of Springfield, in Sangamon county. Plaintiff's lawyer, who objected to the title, lived and practiced law in Springfield. Many of the conferences in regard to the title occurred in Springfield and the abstract was delivered to the plaintiff at his home in Sangamon county. Venue could only lie in Sangamon county if the transaction or some part thereof occurred out of which the cause of action arose. The plaintiff contends that the basis of the suit is the failure of the defendant to furnish a merchantable title and that most, if not all of the negotiations on that point occurred in Springfield, in Sangamon county.

Professor Edson R. Sunderland in commenting on the provisions for venue under the new Civil Practice

Act, in 1934, said: "The former practice in Illinois, so far as it related to personal defendants, was based on two principles of venue. One was the defendant's convenience. His place of residence was the proper place to commence and try an action. The other principle was the temporary location of the defendant at the moment when he happened to be handed a summons by the sheriff, a place which had nothing to do with anybody's convenience in trying the case. Under that principle it was perfectly easy for venue to be used, not to serve convenience, but as a means for annoying and embarrassing the defendant. The new practice retains the first principle, that of convenience, and makes the defendant's residence a proper venue. It abolishes the second principle, which had nothing to do with convenience. And it adds a new principle, namely, the convenience of the witnesses, by making it possible to litigate the case where the transaction occurred. As a result of these changes in the rules regarding venue, the plaintiff must determine one of two controlling facts in commencing his suit. He must ascertain either the defendant's residence or the place of the transaction, but if he makes a mistake in either one, the only penalty, of course, is a change of venue." (March 28, 1934, 28 Ill. Law Review 861.)

The contract between the parties said: "The first parties agree to furnish an abstract showing title to said Real Estate in accordance with this contract and allow second party reasonable time to have same examined, and thereafter first party shall within a reasonable time correct defects, if any, and shall make such abstract show a merchantable title." There is no question that the examination of the abstract of title, the objections thereto, and the negotiations in connection therewith, all occurred in Sangamon county. In *LaHam v. Sterling Canning Company, Inc.*, 321 Ill. App. 32, the court said: "In *Van Meter v. Goldfarb*,

317 Ill. 620, the court, in discussing the meaning of the term 'transaction' as used in the Evidence Act, quoting from *Craft Refrigerating Mach. Co. v. Quinnipiac Brewing Co.*, 63 Conn. 551, 25 L. R. A. 856, said that ' "a 'transaction' is something which has taken place, whereby a cause of action has arisen . . . and by which the legal relations of such persons between themselves are altered," ' and likewise quoted with approval the *dictum* in *Barnett's Adm'r. v. Brand*, 165 Ky. 616, 177 S. W. 461, that ' "the word 'transaction' . . . is held to mean every variety of affairs which forms the subject of negotiations or actions between the parties." ' " In *Schmelzle v. Transportation Inv. Corp.*, 341 Ill. App. 639, citing the LaHam case, the court said: "Ordinarily, a cause of action includes 'every fact necessary for plaintiff to prove to entitle him to succeed—every fact that defendant would have a right to traverse.' (*Walters v. City of Ottawa*, 240 Ill. 259)." And in the *Schmelzle* case, *supra*, the court continuing, said: "In the instant case, plaintiff and defendant had no personal or direct dealings in any county, however, certain acts, which were integral parts of plaintiff's cause of action, and which he would have to establish in order to assert any rights on the instrument, occurred in Freeport, in Stephenson County. It was there that plaintiff endorsed the check for the accommodation of the payee, Twin City Transit Lines, Inc., which had its principal office and registered agent there; that plaintiff paid the amount of the check to the First National Bank of Freeport, after the bank notified plaintiff that defendant had refused payment; and that plaintiff received the instrument itself from the bank. Under these circumstances, it would appear that a substantial part of the 'transaction' out of which plaintiff's individual cause of action arose, did occur in Stephenson County. . . ."

█ In view of the many conferences, the negotiations and other dealings between the parties that occurred in Sangamon county, we are convinced that this case falls within that provision of the Practice Act, that "the transaction or some part thereof, occurred out of which the cause of action arose" in Sangamon county, and that the venue is proper.

The remaining errors all relate in some manner to the question of the merchantability or non-merchantability of the title of West. The admission of evidence or refusal of the trial court to admit certain evidence, the evidence offered and refused as to the state of health of the defendant West, and other matters all seem to this court to be part of the question of the merchantability and the attempt by West to make the title merchantable within a reasonable time. Without going into each error assigned, the matter will be discussed therefore, on the question of merchantable title, as required by the contract between the parties. The Supreme Court in commenting on this matter when this case was before it, said: "Payment was to be made, it is true, within ninety days and time was declared, by the contract, to be of the essence thereof. Christopher erroneously construes the contract as though West had agreed to deliver an abstract showing merchantable title within the time fixed for payment. An analysis of the contract discloses this was not the expressed agreement of the parties. West under the terms thereof was to warrant only that title the abstract ultimately had to show, namely, a merchantable title. Such title need not necessarily be a perfect record title without fault, defect or omission. Differences of opinion as to the merchantability may, and frequently do, arise among attorneys astute in title matters; but whenever the abstract, together with explanatory affidavits, evidences an indefeasible

title in fee simple, whether had by deed, devise or by the Statute of Limitations, there is a merchantable title." (*Christopher v. West,* 409 Ill. 131.)

Assuming that the opinion of the attorney for the plaintiff was correct and that the three defects cited rendered the title non-merchantable, the evidence shows that the seller, the defendant, made every effort to correct these defects within a reasonable time. The attorney for the plaintiff in his preliminary opinion of title listed three defects:

1. There was no proof of notice to probate the will of Logan A. Gridley, deceased, to his heirs, legatees and devisees.

2. There was no proof that the First Trust and Savings Bank, devisee under the will of Logan A. Gridley, was one and the same as the First Union Trust and Savings Bank which merged with the First National Bank of Chicago and named in the quitclaim deed to be the successor of the First Trust and Savings Bank.

3. That the bank had no power of partition.

The defendant took steps to cure these defects in the following manner:

1. A certificate of mailing notice for the probate of the will of Logan A. Gridley, certified to by the Probate Clerk of Kane County, Illinois.

2. A certified Auditor's certificate for the change of name from the "First Trust and Savings Bank" to the "First Union Trust and Savings Bank."

3. Proceedings in the circuit court of Iroquois county, to quiet the title to the real estate in West. ▮▮▮ True it is, that this was not satisfactory to the plaintiff or his attorney, but that is not the test of a merchantable title. A merchantable title does not necessarily mean or require a perfect title. As said in *Bedinger v. May,* 323 Ill. 187, "A merchantable title

530

is not necessarily a perfect record title, without fault, defect or omission, but whenever an abstract, together with explanatory affidavits, shows a person to have an indefeasible title in fee simple, whether acquired by deed, devise or by virtue of the Statute of Limitations, then such abstract shows a merchantable title.''

■ While a purchaser cannot be compelled to take a doubtful title, he will not be permitted to object to the title on account of the bare possibility that it will prove defective (*Garden City Sand Co. v. Miller,* 157 Ill. 225; *Attebery v. Blair,* 244 Ill. 363). In the case of *Geithman v. Eichler,* 265 Ill. 579, the contract provided that the vendor should convey a fee simple title, free of encumbrances, by warranty deed. The court there said: ''This did not necessarily mean a perfect title of record but meant a good merchantable title. A party may have such title to land notwithstanding apparent defects in the chain are shown by the records,'' In the case of *Dime Savings and Trust Co. v. Knapp,* 313 Ill. 377, the court there said: ''If it were necessary, in order to establish a good title, that an abstract show a perfect paper title, without fault, defect or omission, although cured by existing facts or lapse of time, land could rarely, if ever, be sold.''

■ From the rule as laid down in these cases defining a merchantable title, we must conclude that when the vendor, West, met the objections of the vendee within a reasonable time, as was done in this case, that West provided the vendee with a good merchantable title within the meaning of the contract and the intention of the parties.

The trial court erred, therefore, in instructing the jury to find the issues in favor of the plaintiff and against the defendant inasmuch as the title was made merchantable within a reasonable time, by reason of

which plaintiff had no right to rescind the contract without having first made tender of the purchase price.

For the reasons above stated the judgment of the circuit court of Sangamon county is reversed.

*Reversed.*