Jamil T. La Ham, Appellee, v. Sterling Canning Company, Inc. et al., Appellants. John C. Thrall et al., Other Defendants.

Gen. No. 42,734.

Heard in the second division of this court for the first district at the April term, 1943. Opinion filed December 14, 1943.

SHELDON & BROWN, of Sterling, and DENT, WEICHELT & HAMPTON, of Chicago, for appellants.

DAVID & FAINMAN, of Chicago, for appellee; SIGMUND W. DAVID and JEROME L. ABRAHAMS, both of Chicago, of counsel.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Jamil T. La Ham, a resident of Winneconne, Wisconsin, filed his complaint in chancery in the circuit court of Cook county against Sterling Canning Company, Inc., an Illinois corporation, having its principal. office and registered agent in Sterling, Whiteside county, Illinois, John W. and John C. Thrall, residents of Winneconne, Wisconsin, Douglas H. Thrall, a resident of Rock Falls, Whiteside county, Illinois, and John and Frank Schrader, residents of Rush Lake, Wisconsin, seeking to establish himself as the owner of one third of the shares of the Sterling Canning Company, alleged to have been acquired by purchase with funds contributed in equal parts by him and John W. and Douglas H. Thrall pursuant to an oral agreement entered into in Winneconne, Wisconsin, and praying for multiple relief, including liquidation of the canning company, an examination of the books and records of the corporation, an accounting, the recovery from certain of the individual defendants of damages on account of alleged misappropriation or waste of assets, the appointment of a receiver, and the issuance of a temporary injunction.

Although none of the defendants resides in Cook county, plaintiff sought to invoke the jurisdiction of the court pursuant to section 7 of the Civil Practice Act (Ill. Rev. Stat. 1943, ch. 110, par. 131 [Jones Ill. Stats. Ann. 104.007]), which provides that every civil action shall be commenced in the county where one or more defendants reside or "in which the transaction or some part thereof occurred out of which the cause of action arose." None of the defendants was served with summons, but they were notified to appear in court on April 1, 1943 on plaintiff's motion for the entry of an order requiring the Thralls to answer subparagraphs 1 to 9 of paragraph (a) of the complaint pertaining to that part of the transaction by which he and the Thralls agreed orally to purchase the Sterling

Canning Company, a lucrative enterprise alleged to be capable of earning $100,000 annually, and acquire each one-third interest therein through the investment of equal amounts by each of the parties; also requiring defendants to produce the books and records of the defendant corporation in Cook county for examination and audit by plaintiff; restraining defendants as prayed in the complaint; and asking for the appointment of a receiver *pendente lite* of the defendant corporation.

In response to the notice the canning company, John W. and Douglas H. Thrall appeared specially to contest the jurisdiction of the court, and filed their respective motions to dismiss the complaint on the ground that the principal office of the canning company was in Whiteside county, Illinois, and not in Cook county, that it was not doing business and never had done business in Cook county, that the court did not have power to liquidate the business and assets of the canning company, that none of the defendants resided in Cook county, and that no part of the transaction out of which plaintiff's alleged cause of action arose occurred within Cook county. Affidavits filed in support of the motion set forth in detail the several residences of the individual defendants in Illinois and Wisconsin, outside of Cook county, and alleged that the canning company does not have or maintain any office, warehouse, stock of merchandise or agent in Cook county, is not listed in any telephone directory in Cook county and is not now doing and has never done business in Cook county; that no one of the defendants resides within Cook county; that no part of the transaction out of which plaintiff alleges his cause of action arose occurred in Cook county; that no transaction, verbal or written, or undertaking or conference was ever had by and between plaintiff and any one or more of the defendants in relation to the subject matter of this suit in Cook county, but that all of them,

in so far as they did occur, took place at either Sterling, Illinois or Winneconne, Wisconsin.

When the cause came on for hearing on April 1, 1943 upon plaintiff's several motions and the motion of defendants, "appearing specially," to dismiss the complaint, an order was entered "Upon motion of defendants, . . . that said motions and each of them" be continued to April 5, 1943 and at the same time leave was granted to Sterling Canning Company and the Thralls, "appearing specially," to file additional affidavits in support of their respective motions to dismiss the complaint. Thereafter, on April 5, 1943, John W. and Douglas H. Thrall filed their additional affidavits, supported by documentary evidence, setting forth the various steps taken with respect to the incorporation of the canning company, the several meetings had in pursuance of the plan, the times and places where the parties met, outside of Cook county, the subscriptions for stock and the sums paid on account thereof, together with a denial that plaintiff ever claimed he should own or did own a one-third interest in the canning company or shares to be issued by it, until filing his suit.

On April 5, 1943, the court, after reciting that defendants had appeared specially for the sole and only purpose of contesting the jurisdiction of the court, to dismiss plaintiff's action, supported by their several affidavits, ruled that it had jurisdiction of the subject matter because a part of the transaction out of which plaintiff's cause of action arose, occurred in Cook county, as well as "of all those defendants who will appear generally or will legally be served with process of this court," and ordered that the motions of defendants to dismiss the complaint be denied.

No disposition was made of plaintiff's several motions on April 5, but on April 9, 1943, the chancellor entered an order directing the Thralls to answer, under oath, the matters set forth in subparagraphs 1

to 9 of paragraph (a) of the complaint, directing them on a day certain to produce the books and records of the canning company before a master in chancery for examination and audit, and issued a temporary injunction as prayed for in the complaint.

Thereafter, counsel served notice that on April 20, 1943 they would ''present the motion in writing of the defendants, . . . appearing specially, to vacate the [restraining] order'' theretofore entered on April 9, 1943, specifically setting forth, *inter alia,* that the court did not ''at the time such order was entered, . . . nor has it now, jurisdiction of either the subject matter . . . or of any of the defendants.'' The motion to vacate the injunction was denied by written order which again recited that ''said defendants having theretofore appeared specially only to contest the jurisdiction of this court,'' and at the same time, ''on order of the court'' the time for producing and examining defendants' books and records was extended to May 13, 1943. Defendants appeal from the interlocutory injunctional order and the denial of their motion to vacate it.

Plaintiff first takes the position that defendants' course of action as hereinbefore set forth, constituted a general appearance by them and submission to the jurisdiction of the court (1) because the order of April 1, 1943, continuing the hearing on plaintiff's motion for an injunction and on defendants' motion to dismiss the cause for lack of jurisdiction, recites that the continuance was on motion of defendants, and (2) because the subsequent motion to dissolve the injunction order on April 20, 1943, was made by attorneys instead of by the defendants in their own proper persons. It must be conceded, of course, that on April 1, 1943 the defendants limited their appearances to the purpose of objecting to the jurisdiction of the court, and the record indicates that the motions to dismiss, to vacate, and in fact every motion filed by them in the

cause, as well as the orders entered by the court, contain the statement that defendants appeared specially and for the purpose of objecting to the jurisdiction of the court. The continuance order of April 1, upon which plaintiff bases his contention, recites that defendants appeared specially, and clearly discloses that the obvious purpose of the continuance was to enable defendants to prepare and submit additional affidavits showing the lack of jurisdiction of the court. The motion to vacate, which was made by attorneys and not *per se,* states that defendants appeared specially and alleges constitutional and other reasons why the court did not have jurisdiction of the cause. It is thus apparent that all proceedings involved the defendants' contention of lack of jurisdiction, and that they at all times expressed their unwillingness to submit to the jurisdiction of the court and urged on every occasion on which they appeared that the court lacked jurisdiction.

Plaintiff relies on *Tagert v. Fletcher,* 232 Ill. 197; *Kelly v. Brown,* 310 Ill. 319; *In re Estate of Bransfield,* 292 Ill. App. 206, and other decisions, to support his argument that defendants' actions constituted a general appearance. However, in the cases cited, suit was brought in the proper county, but the several defendants challenged the jurisdiction of the court either because they had not yet been served with process or because of some alleged defect in the manner of service. Their motions were of a dilatory nature, and if they had been sustained the result would have been merely to suspend the proceedings until process could be served. In the case at bar defendants' motions were not dilatory. They challenged the jurisdiction of the court to enter any order, except for dismissal, and if sustained, would have prevented the entry of the restraining order from which they appeal. We are fully aware of decisions in Illinois which hold that a party may submit to the jurisdiction of the court by

action which constitutes a general appearance, but in this proceeding defendants constantly denied that the court had jurisdiction of either their persons or the subject matter, and it would be a denial of their right to insist that they be sued in the place provided by statute to hold that they were divested of that right for either of the reasons assigned.

The more important question presented is whether, under the allegations of the complaint and the affidavits filed in support of defendants' motions to dismiss the cause, the court properly ruled that that part of the transaction out of which the plaintiff's cause of action arose occurred in Cook county. If the chancellor's ruling was correct the question heretofore considered assumes secondary importance because the statute provides, in the alternative, that civil actions shall be commenced in the county where one or more of the defendants reside *or* in which the transaction or some part thereof occurred out of which the cause of action arose. Conversely, if the chancellor ruled erroneously it would follow that the court lacked jurisdiction because none of the defendants resides within Cook county, and therefore it had no power to enjoin them. Counsel agree that the ''transaction'' feature of section 7 does not appear in the statutes of any other State. It was evidently the draftsman's concept of a proper basis for venue. Although the scope and meaning of the word ''transaction'' has frequently had judicial consideration in other States, and under other statutes, none of the cases cited by counsel is pertinent to the circumstances here presented. Therefore, the question must be resolved through an analysis of the pleadings to determine what the transaction was and whether any part thereof out of which the cause of action arose, occurred in Cook county.

From the salient allegations of the complaint, which consists of some 50 pages, it appears that prior to April 1942 John W. and Douglas H. Thrall, father and

son, were the principal officers, directors and stockholders of the Wisconsin Canning Company at Winneconne, Wisconsin. Plaintiff, who was a practicing physician in that city, had known them for years and had confidence in their integrity and good faith. Early in April 1942 the Thralls informed plaintiff of their prior negotiations in Chicago with the National Tea Company for the purchase of a factory and equipment in Sterling, Illinois, owned by the Sterling Food Products Company, a wholly owned subsidiary of National Tea Company. They believed the plant could be purchased for about $45,000; that the purchase money could be obtained by loan from the Crown Can Company on certain conditions; that the factory could be operated with an initial capital of approximately $24,000; and that the business, if efficiently operated, would yield a net profit of at least $100,000 a year. They told plaintiff they could not consummate the transaction themselves, but needed a responsible third person to obtain the loan from the Crown Can Company and to provide sufficient capital to operate the business, and proposed that plaintiff join with them in the enterprise and invest $8,000 as his share; that if he would do so, each of them would invest an equal sum and have and own a one-third interest in the plant to be purchased and in the canning business to be operated in Sterling, in which they would share the profits and losses equally, to the exclusion of any other person. Pursuant to the preliminary agreement, which was alleged to have been made in Winneconne, the Thralls, acting as agents for themselves and plaintiff, entered into a contract with the Sterling Food Products Company as seller and plaintiff and defendants as buyers, for the sale and purchase of the plant for $45,000. A down payment was made, all negotiations were carried on, and the contract was executed on the part of the seller, in Chicago. The agreement provided for the conveyance of title to plaintiff and

defendants, the final purchase payment to be made at the office of the National Tea Company in Chicago, and the deed to the plant was to be delivered to the purchasers in Chicago. Before the deed was delivered, defendants and plaintiff had modified their enterprise to the extent that a corporation, rather than a copartnership, was to be formed, and the factory was to be owned and the business operated by the corporation. The Sterling Food Products Company was authorized by plaintiff and defendants to make the deed to the corporation. Late in April the Thralls informed plaintiff that the business would not commence operations until August, and therefore it would not need $24,000 as capital, but that $15,000 would suffice; that each of the Thralls was putting in $5,000, and plaintiff should contribute $5,000 instead of $8,000. Plaintiff contributed $4,000 on April 30, and an additional $1,000 on May 12, and has at all times been ready and able to pay the additional $3,000, as was originally agreed upon, or more if necessary, but has never been called upon to do so. Subsequently, when the Thralls wanted to get some of their personal friends into the business, to which plaintiff objected, he offered to put in another $5,000, but the Thralls refused his offer. Plaintiff alleged that when he delivered his checks for $5,000 it was agreed that he and each of the Thralls were to receive one third of all shares issued by the defendant corporation, that no further shares were to be issued until further equal contributions had been made by the parties, and that at all times since April 1942, until the end of November 1942, he was assured by the Thralls that he was, and was treated by them as, the owner of one-third interest in the corporation and one third of its stock.

It thus appears that the only part of the transaction alleged to have occurred in Cook county relates to the acquisition of the canning company, where negotiations between the Thralls on behalf of themselves and

plaintiff took place, where draft of the contract for purchase of the factory was prepared, the first payment made, and where under the provisions of the agreement the purchase of the plant was to be consummated by payment of the balance and delivery of the deed, which was signed and acknowledged in Chicago. But plaintiff does not complain of anything that occurred up to that stage of the transaction, and he does not allege that any of the wrongful acts or acts in violation of his rights occurred in Cook county. The canning company was acquired in pursuance of the oral agreement entered into in Winneconne and in strict conformity with his voluntary undertaking. At that point he had no complaint, and therefore no cause of action. The transactions of which he feels aggrieved and out of which he alleges his cause of action arose, all followed the purchase of the food products company, and none of them or any part thereof occurred in Cook county. Without exception, they took place either in Sterling, Illinois or Winneconne, Wisconsin.

The gravamen of the complaint which gave rise to an alleged cause of action is that after the canning company had been acquired, the articles of incorporation for the new enterprise, which plaintiff signed but says he did not read and would not have understood if he had because he was unfamiliar with business practices, violated his oral agreement with the Thralls so that the structure of the corporation deprived him of his one-third interest in the business, and permitted outsiders who were friends or relatives of the Thralls to acquire stock in the company contrary to repeated assurances given him that he and the Thralls would be the sole owners of the corporation and would share in the profits and losses equally to the exclusion of any other person; that defendants and their attorneys assumed full control of the corporate records and books and operated the business without reference to their

agreement with him, in violation of his rights and for the purpose of siphoning off the profits to themselves and obtaining stock and unconscionable salaries to which they were not entitled; that instead of becoming the owner of one third of the shares of the corporation, he ultimately learned in November 1942 that the stock had been apportioned as follows: John W. Thrall, 180 shares, Douglas H. Thrall, 80 shares, John and Frank Schrader, 50 shares each, and 50 shares to himself; that of the 180 shares apportioned to John W. Thrall, 100 shares thereof had been taken by him for alleged services rendered to the corporation; that the salaries of the Thralls as officers and executives had been greatly increased beyond his original agreement with them, and in addition thereto they had each been paid some $700, presumably for fees as directors for 1942; that over his objection the Thralls entered into an agreement with a finance company for additional working capital to carry out a contract with the government for canning beef stew, by which the finance company was to receive, in addition to interest on the money advanced, a large share of the profits on the contract, thus diverting a considerable part of the earnings of the company from the rightful owners thereof; that also in November 1942, over his objection, the Thralls proposed leasing the plant to another corporation known as John W. Thrall and Sons, and when plaintiff inquired as to the purpose of the proposed plans, they informed him that they and their family owned complete control of the Sterling Products Company and intended to do as they pleased with the corporation; that in response to his protest and his reminder that he owned a one-third interest in the defendant corporation, the Thralls said "That has been changed"; that these various acts constituted a conspiracy on the part of the Thralls for the purpose of exploiting the corporation for their own personal benefit and that of their relatives and friends and to deprive plaintiff of his just and rightful share of the

profits of the company; that the defendant corporation, after three months' operation, had made a gross profit of at least $75,000 and a net profit of approximately $35,000; that ultimately they tendered the $5,000 which he had paid on account of his stock subscription, together with his salary as vice president, at the same time advising him that he had failed to pay for the full amount of stock for which he had subscribed and was therefore no longer a shareholder in the corporation; that he then, for the first time, consulted counsel, and after certain correspondence between the attorneys for the respective parties, he lodged his complaint in the circuit court of Cook county.

Plaintiff argues that the "transaction" embraces the entire series of agreements, dealings and acts from the time the preliminary contract was made until defendants attempted to rescind his status as a stockholder, and his counsel say that without the acquisition of the plant in Sterling, the oral agreement could not have been consummated and none of the parties would have acquired any rights against the others; therefore, they contend that no separate act, but all of them collectively, constituted the transaction, and if any of them occurred in Cook county the court had jurisdiction within contemplation of the statute. If that were true a party could fix venue at any place where an incident preliminary to the acts or omissions upon which a cause of action is based, might have occurred, and if a series of events or so-called transactions in one county had been most amicable but had in later years given rise to a cause of action through acts committed in another county, plaintiff could nevertheless fix the venue in the former county by contending that the relationship throughout the years constituted one transaction. We do not think it was the intention of the legislature to fix venue at places where preliminary or incidental events occurred or where acts of inducement, as distinguished from the component

facts of a cause of action, may have taken place. The word "transaction" in the statute is modified by the phrase "out of which the cause of action arose" and if no cause of action can be said to have arisen out of any of the events that occurred in Cook county, all of which were perfectly amicable and in accordance with the agreement of the parties, then no part of the transaction can be said to have occurred here within the meaning of the statute. Moreover, the term "transaction or some part thereof" must necessarily refer to dealings between the parties themselves where they are in a sense adversaries. It could not have been intended to include transactions which the parties had with third persons, out of which no cause of action has arisen. Such dealings as are incidental or preliminary to the transaction between the parties themselves and which do not form the basis of the cause of action, cannot have been intended to constitute the transaction or a part thereof. In *Van Meter v. Goldfarb*, 317 Ill. 620, the court, in discussing the meaning of the term "transaction" as used in the Evidence Act, quoting from *Craft Refrigerating Mach. Co. v. Quinnipiac Brewing Co.*, 63 Conn. 551, 25 L. R. A. 856, said that " 'A "transaction" is something which has taken place, whereby a cause of action has arisen . . . and by which the legal relations of such persons between themselves are altered,' " and likewise quoted with approval the *dictum* in *Barnett's Adm'r v. Brand*, 165 Ky. 616, 177 S. W. 461, that " 'The word "transaction" . . . is held to mean every variety of affairs which forms the subject of negotiations or actions between the parties.' "

Briefly summarized, the cause of action which plaintiff seeks to assert arises out of the alleged misappropriation of assets and mismanagement of the corporation, the breach of oral agreement, the wrongful issuance of shares and the refusal to permit inspection of the corporate records. Not a single one of these alleged acts occurred in Cook county. They all took

place either in Sterling, Illinois or Winneconne, Wisconsin. In McCaskill's 1936 edition of the Illinois Practice Act Annotated, page 21, the author, referring to section 7, points out that "Though transactions and parts of them out of which causes of action arise may have various meanings, the one here intended is one based on trial convenience, balancing all factors involved." On that basis none of the parties would be conveniently served by trying the suit in Cook county. The corporate business is located in Sterling, Illinois, its records are kept there and all the parties reside in the general vicinity of Whiteside county. It seems to us that section 7 of the Civil Practice Act is not reasonably susceptible to the construction for which plaintiff contends, and we think it would be unfair to defendants to construe it so broadly as to allow plaintiff to select the forum and require them to defend the suit in Cook county where none of the parties resides.

For the reasons indicated we are of opinion that the injunction order was void for lack of jurisdiction, and it is therefore reversed.

*Injunction order reversed.*

Sullivan and Scanlan, JJ., concur.