## Keystone Steel and Wire Company, Plaintiff-Appellee, v. Price Iron and Steel Company, Defendant-Appellant.

### Gen. No. 10,534.

Opinion filed January 8, 1952.
Released for publication January 28, 1952.

MILLER, WESTERVELT, JOHNSON & THOMASON, of Peoria, and NICHOLAS J. CONSTANTINE, and GEORGE A. BOSOMBURG, both of Chicago, for appellant.

BAER, DAVIS & WITHERELL, of Peoria, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

The Keystone Steel and Wire Company, an Illinois corporation, started a suit in the circuit court of Peoria county, against the Price Iron and Steel Company, an Illinois corporation, with its main office in Chicago, Illinois. The suit was for damage for the defendant's failure to furnish scrap steel, as provided in the contract between the parties. It is alleged in the complaint that the parties entered into a contract whereby the defendant agreed to sell, and the plaintiff agreed to buy certain scrap iron, but that the defendant had defaulted in its contract and failed to supply the iron as contracted for, and the plaintiff was damaged and had to purchase scrap iron at a higher price than the defendant had agreed to furnish, and thereby was damaged to the amount of $35,000.

The defendant made a motion to dismiss the suit claiming that the circuit court of Peoria county did not have jurisdiction of the parties to the suit. It is conceded that the defendant Company's office is in Chicago, Illinois, therefore the defendant contended that the court did not have jurisdiction to hear the suit, or in the alternative, the suit should be transferred to either the circuit or superior court of Cook county. The plaintiff claimed that the Practice Act, sections 131 and 132 [Ill. Rev. Stat. 1949, ch. 110; Jones Ill. Stats. Ann. 104.007, 104.008] gave the court jurisdiction to hear the suit. The part material to the issues, of section 131 is, "Every civil action shall be commenced in the County,—in which the transaction or some part thereof occurred out of which the cause of action arose." Section 132 the material part is, "Civil actions may be commenced against any private corporation,—in the county in which the transaction or some part thereof occurred, out of which the cause of action arose." In the present case the contract in question was prepared and signed by the plaintiff, the Keystone Steel and Wire Company in Peoria, and then forwarded to the defendant Company in Chicago, Illinois. They signed it and returned it to the plaintiff, and it is the contention of the plaintiff that this contract comes squarely within the Practice Act; that a part of the transaction occurred in Peoria county, and the other part in Cook county. The court overruled the motion to dismiss the suit, or transfer the case to Cook county, and the defendant then answered and denied that they agreed to sell and deliver scrap iron to the plaintiff Company, but that they were simply brokers employed by the plaintiff to furnish this scrap iron.

The case was submitted to the court without a jury that found the issues in favor of the plaintiff and assessed its damages at $24,703.20. This judgment

included $1,589.10 as interest extended from November 18, 1949, to the date of the judgment. It is from this judgment that the appellant, Price Iron and Steel Company, has prosecuted an appeal to this court.

It is first insisted that the trial court erred in not sustaining their motion to dismiss the suit or transfer it to Cook county for further hearing. Appellant has cited numerous cases which it contends supports its contention that the court did not have jurisdiction to try the case. Several of these cases cited are under the old Practice Act, and not applicable to the statute as it now stands. In several of the cases the question was not raised in the trial court, and the court of review held that it could not be raised in the upper court for the first time. We find no case cited by the appellant where the same question was raised as that presented for us in this appeal; namely, where it is shown that the transaction in question occurred in two counties.

The Appellate Court of the Fourth District in the case of *Consolidated Gasoline Company v. Lexow*, 316 Ill. App. 257, had the same question presented to it as we are now discussing. In the opinion we find this language: ''It will be observed from a reading of the motion to strike that the defendants below did not see fit to challenge the recital in the complaint that part of the transaction in question occurred in St. Clair county. We are of the opinion that the allegation in the complaint that the lease was made and executed partly in St. Clair county was sufficient to confer jurisdiction upon the circuit court of that county. Conceivably, the lease in question could have been made and executed partly in one county and partly in another. If one party to the lease signed in Madison county and another party thereto signed in St. Clair county, certainly the transaction would occur partly in one and partly in the other. Contrary

308

to the contention of the appellees, it would not depend upon who signed last, nor where the instrument was delivered. Preliminary to the execution of the lease, negotiations might have taken place partly in one county and partly in another.'' We agree with the law as stated in this case that it makes no difference which party signed first, or where it was delivered. It shows that part of the transaction took place in Peoria county, and the other part in Cook county, and it is our conclusion that the court did have jurisdiction to try the case and did not err in overruling appellant's motion to dismiss the suit, or transfer the case to some court in Cook county.

It is seriously insisted by the appellant that this contract is not a contract whereby the defendant agreed to sell, and the plaintiff agreed to buy a certain amount of scrap steel from them, but that this defendant was simply to act as the broker in buying steel for the plaintiff. The contract is as follows:

''KEYSTONE STEEL & WIRE COMPANY
Ph. 4–7171          Peoria, 7 Illinois
                         Purchase Contract No. S–9941
W. C. ERKERT
Director of Purchases
F. A. LITTLE                              Date JUNE 7, 1949.
Purchasing Agent
At and upon the following prices, terms and conditions, PRICE IRON & STEEL CO., of PEOPLES GAS BLDG., Chicago, Illinois, agrees to sell and KEYSTONE STEEL & WIRE COMPANY, Peoria, Ill., Agrees to buy:

| Quantity | Description of Material |
| --- | --- |
| 500 GT | Of No. 1 Railroad Heavy Melting Steel, Item #24–A, Originating I. C. RR. Confirms Telephone Order Placed with Mr. Walter Bregman Today. |

Price $20.10 Gt Including Commission.

Point of Delivery
Peoria, Illinois

F. O. B. Cars I. C. Tracks Pekin, Illinois.

Via P & Pu Delivery.
Within 60 Days.

Terms: Net 15 Days.   Time of Shipment (Expiration Date Midnight August 5, 1949).

Remarks:—Send bill of lading, shipping notice showing gross, tare and net weights, and invoice in duplicate for each car on date shipment is made. Cars arriving without notice showing weights, or not meeting specifications will be held pending adjustment and car service charged to SELLER.

Failure to observe proration of shipments subjects seller to demurrage charges if and when they accrue.

Material is purchased subject to BUYER's weight and grading—Load in flat bottom open top steel cars not to exceed 50 feet in length.

Weight certificates to be furnished SELLER on request. Apparent shortages in excess of 1,000 lbs. per car to be reported to SELLER before unloading.

This order is given and accepted with the understanding that it is subject to strikes, accidents and causes beyond BUYER's control. If any of the material is not shipped as herein provided, the BUYER may, on written notice to the SELLER, decline to receive such unshipped tonnage, or buy an equal tonnage in the open market, charging the SELLER with excess cost, if any. Until such notice is given, time of shipment will be considered as extended at pleasure of BUYER.

CONTRACT NUMBER MUST BE SHOWN ON EACH INVOICE AND SHIPPING NOTICE.

Specifications and conditions on back of contract are to govern.

310

The seller certifies that the material purchased hereunder has been manufactured in conformity with both State and Federal Laws in regard to wages and hours and that no employee was employed in the production of such goods who is under the age limits prescribed by State or Federal Laws.

Acceptance hereof to constitute Contract as above stipulated.

KEYSTONE STEEL & WIRE Co.
By Frank A. Little
Purchasing Agent.

Accepted: June 7, 1949
PRICE IRON & STEEL COMPANY
By E. F. Greinke
A85

(Over)

9/30 FAL:MM

Please Sign and Return Original to Us for Our File.''

It will be observed that the first part of the contract provides: At and upon the following prices, terms and conditions, Price Iron and Steel Co., of Peoples Gas Building, Chicago, Illinois, agrees to sell and Keystone Steel and Wire Company, Peoria, Illinois, agrees to buy certain described scrap iron and confirms telephone order placed with Mr. Walter Bregman today. This standing alone undoubtedly is a contract whereby the defendant agreed to sell and the plaintiff agreed to buy certain described scrap iron. We find nothing in this part that would in any way indicate that the Price Iron and Steel Company was to act as the broker for the plaintiff in buying this iron.

▇▇▇ Considerable evidence was introduced to show the correspondence between the parties after the contract was entered into, as it shows there was lengthy delay on the part of the defendant in delivering the

311

scrap. They also had some experts testify in regard to the custom of buying and selling scrap iron. The appellant relies strongly upon the case of *Hunter v. Gordon,* reported in 33 Ill. App. 464, at page 465, a First District case. In this case Hunter and Gordon entered into a contract to sell certain meat. Gordon lived in Glasgow, Scotland, and Hunter in Chicago. The question arose whether Hunter was an agent and broker to procure the meat for Gordon, or whether he had a contract of sale to sell the meat to Gordon. A great deal of the parole testimony was admitted to interpret the contract. Correspondence back and forth between the parties was also admitted, and the court held that Hunter was only a broker and did not have a contract of sale with Gordon. No doubt all of this testimony was proper, as there was no written contract whatsoever between the parties, but they had to depend wholly upon the correspondence to decide what the contract really was between them. That case is no aid to us in deciding this case. Here we have a written contract and parole evidence is not admissible to vary its terms. After reviewing all of the evidence and an examination of the contract itself, we are satisfied the trial court properly held that this was a contract of sale, and not a brokerage contract.

The Fourth Paragraph of the contract, after the description of the property and where the scrap should be delivered provides as follows: "If any of the material is not shipped as herein provided, the buyer may, on written notice to the seller, decline to receive such unshipped tonnage, or buy an equal tonnage in the open market, charging the seller with excess cost, if any. Until such notice is given, time of shipment will be considered as extended at pleasure of buyer." The buyer referred to in this paragraph certainly means the plaintiff and the seller necessarily means the defendant, as the Keystone Steel and Wire Company

had no contract whatsoever with anyone else to furnish this scrap except the defendant. This is another proof that it is a contract of sale instead of a brokerage one.

■ Appellant's fourth assignment of error is that the court used some arbitrary measure of damages then says: "From the foregoing, it is evident, we believe that plaintiff is not entitled to damages, on the contrary it should be censored and even fined for imposing on the trial Court." In its conclusions it says, "that plaintiff indulged in conduct amounting to imposition upon the Court and even to contempt of Court. This judgment, if allowed to stand, would reflect discredit upon administration of justice in Courts of law." How such language as this would be of any benefit, or any assistance to this court in arriving at the merits of this controversy is hard to conceive. This is no place for such argument.

The statute provides that where a contract is breached the buyer may have a suit for failure of the seller to deliver the goods. Section 67 of chapter 121½ of the Illinois Revised Statutes [1949] [Jones Ill. Stats. Ann. 121.71], which is part of the Sale's Act provides as follows: "Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver."

■ The evidence in this case is conflicting as to the exact time the defendant refused to deliver the scrap as called for in the contract. The contract itself provides: "If any of the material is not shipped as herein provided, the buyer may, on written notice to the seller, decline to receive such unshipped tonnage, or buy an equal tonnage in the open market, charging the seller

313

with excess cost, if any. Until such notice is given, time of shipment will be considered as extended at pleasure of buyer." Construing the section of the statute and the contract together, it is evident that the plaintiff in this case, after the refusal of the defendant to deliver the scrap as agreed, had the right to go into the open market and buy the amount of scrap that the defendant had failed to deliver under the contract. There was considerable correspondence back and forth, and it was not until some time in November 1949, that the defendant definitely refused to deliver any more scrap under the contract. We are convinced that the court properly assessed the damages, as disclosed by the record in this case.

The next question that arises, is whether the plaintiff was entitled to interest on the amount of damages that the court found due under the contract. It is first insisted by the appellant that the plaintiff did not ask for interest in its complaint, but in its reply brief it admits that interest was demanded in addition to the judgment in the amount of damage asked. It is claimed that the trial court improperly allowed interest on the amount found due from the defendant to the plaintiff. The judgment order recites that there is due and owing from the defendant to the plaintiff the sum of $23,114.10 with interest at 5% from November 8, 1949. Section 2 of chapter 74 of Illinois Revised Statutes [1949] [Jones Ill. Stats Ann. 67.02] relative to interest provides as follows: "Creditors shall be allowed to receive at the rate of 5% per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." In the case of *Smith v. Gray*, 316 Ill. 488, the suit involved damages under a building contract and the court there stated that a building contract was within the contemplation of the statute as other instruments in writing and allowed interest on the amount

due under the contract. In the case of *Norton Iron Works v. Wilson Steel Products Co.*, 232 Ill. App. 523, there was a breach of contract for the sale of a large quantity of brass. The court found the issues in favor of the plaintiff and assessed its damage. A dispute arose whether or not interest was allowable on the amount of plaintiff's damages. The court in passing upon this matter states: "It was contended that the court erred in allowing interest. We think there was no error in this regard. The contract was in writing and the damages were ascertainable by computation of the difference between the contract price and the market price on November 24, 1920. Interest is properly allowed in such cases. (*Murray vs. Doud & Co.*, 167 Ill. 368, 375; *Laughlin vs. Hopkinson* 292 Ill. 80, 86.)" We think the trial court properly allowed interest in this case.

We find no reversible error in this case and the judgment is therefore affirmed.

*Judgment affirmed.*