FREY CORPORATION *et al.*, Plaintiffs-Appellees, v. GILLDORN MORT-
GAGE MIDWEST, INC., Defendant-Appellant.

Third District    No. 3—84—0239

Opinion filed March 12, 1985.

Brian W. Blaesser, of Siemon, Larsen & Purdy, of Chicago, for appellant.

Hollis W. Benjamin and James B. Lewis, both of Peoria, for appellees.

JUSTICE BARRY delivered the opinion of the court:

Plaintiffs, Frey Corporation and Sinnco, Inc., brought a com-
plaint on November 14, 1983, in the circuit court of Peoria County,
seeking to recover damages for the alleged breach of a contractual
duty owed by defendant, Gilldorn Mortgage Midwest Corporation,

successor in interest to Percy Wilson Mortgage and Finance Corporation. Gilldorn, through its attorney, filed a special and limited appearance and moved to transfer the cause for proper venue to the circuit court of Cook County. The motion was denied, and defendants petitioned for leave to appeal in this court. (87 Ill. 2d R. 306(a)(1)(iv).) We granted defendant's petition and now affirm the trial court's denial of the motion to transfer.

Plaintiff Frey, through its president Brian Frey, retained M. E. Hoffman Company in 1979 to act as the mortgage banker/broker for a construction project in Peoria known as Lexington West Apartments. Hoffman was a Springfield (Sangamon County) based firm. Its vice-president, Marion Ring, called upon Frey at Frey's offices in Peoria and formalized their relationship with respect to the project on April 20, 1979, when Ring accepted Frey's check for $4,509, representing the application fee for obtaining a "Firm Commitment for Insurance of Advances" from the Department of Housing and Urban Development. The firm commitment was to be secured and extended, as necessary, until work on the project began. The HUD office serving the Peoria area is located in Chicago, Cook County. On November 21, 1979, HUD approved Hoffman's application and issued to Hoffman a firm commitment in the amount of $1,496,400 for funding the Lexington West project. The contract for the commitment as it appears in the record before us was amended on December 5, 1979, and March 7, 1980. It lists the sponsor for the project as "Sinn, Inc. et al" of Peoria.

Subsequently, on June 29, 1981, Hoffman entered into an agreement with Percy Wilson Mortgage and Finance Corporation in which Hoffman assigned its interests in the Lexington West project to Percy Wilson. It appears from the record before us that the assignment document was brought by Ring to Peoria for plaintiff's signature on the consent portion of the form. Also while in Peoria, Ring introduced plaintiffs to Patricia Rose, a senior officer of Percy Wilson. The assignment was consented to in Peoria by Ronald Sinn for "Sinn, Inc.," as sponsor, on July 2, and in Chicago by the Federal Housing Administration on July 22, 1981.

Thereafter, plaintiffs paid Percy Wilson a nonrefundable commitment fee in the amount of $37,038 to secure the commitment previously obtained by Hoffman.

On September 29, 1982, the firm commitment expired, allegedly as a result of Percy Wilson's breach of a duty to secure timely extension or to take reasonable steps to re-open the expired firm commitment. In addition to the loss of fees paid to the mortgage bank-

ers/brokers, plaintiffs allege substantial damages for loss of syndication fees and other costs related to the proposed construction project.

In this appeal, Gilldorn argues initially that the trial court erred in denying its transfer motion by applying a *forum non conveniens* analysis when the issue was, instead, one of proper venue. The record before us contains no transcript of proceedings or other common law document to substantiate defendant's position that the trial court was confused about the theory upon which defendant's motion to transfer was based. In fact, the record on appeal directly refutes the defendant's contention. The sole document reflecting the trial court's consideration of the issue is the court's order of March 1984, denying the defendant's motion. That order states as follows:

"The Court previously heard and took under advisement the defendant's *motion to transfer to proper venue*. The Court is now ready to announce its decision.

It is order that defendant's *motion to transfer to proper venue* be and is hereby denied." (Emphasis added.)

The balance of defendant's arguments on appeal challenge the correctness of the trial court's order on grounds that the transaction out of which plaintiff's cause of action arose occurred exclusively or primarily in Cook County, rather than in Peoria County. Plaintiffs take the position that while proper venue could lie in Cook County, venue is also proper in Peoria County because a significant part of the transaction out of which their cause of action arose occurred there.

■■ The issue before us requires interpretation of the Illinois venue statute (Ill. Rev. Stat. 1983, ch. 110, par. 2—101) in terms of the operative facts of this case. That statute, in relevant part, states as follows:

"Except as otherwise provided in this Act, every action must be commenced (1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose."

Since plaintiffs do not dispute defendant's contention that it and its predecessor in interest, Percy Wilson, resided only in Chicago, the relevant inquiry focuses upon where the "transaction or some part thereof occurred out of which the cause of action arose."

Defendant first advances its position on the theory of novation,

contending that the only transaction out of which the contract at the heart of this cause of action arose was the assignment of commitment agreement whereby defendant's predecessor in interest accepted Hoffman's assignment in Chicago, and plaintiffs consented to it, thereby working a novation and extinguishing the prior agreements between Hoffman and plaintiffs. The Federal Housing Administration's later consent to the assignment in Chicago, defendant continues, constituted "execution" of the assignment. Ergo, defendant concludes, venue could lie only in Cook County.

Defendant's novation argument, unsupported by legal authority, is unpersuasive and must fail. Whether a novation may be said to have resulted from the assignment, we do not believe that a resolution of that question necessarily results in the conclusion urged by defendant.

Defendant's narrowly defined construction of "transaction" on the sole basis of where a contract is "executed" does not comport with the principle of convenience of witnesses, which the legislature sought to promote through the venue act currently in force in Illinois. (See *Christopher v. West* (1952), 345 Ill. App. 515, 527, 104 N.E.2d 309, 314.) Our review of precedent case law convinces us that a broader definition applies.

The word "transaction" was discussed in great detail in *Christopher v. West* (1952), 345 Ill. App. 515, 528, 104 N.E.2d 309, 315:

> " ' " "[A] "transaction" is something which has taken place, whereby a cause of action has arisen *** and by which the legal relations of such persons between themselves are altered,' " [quoting from *La Ham v. Sterling Canning Co.* (1943), 321 Ill. App. 32, 44, 52 N.E.2d 467, 472; *VanMeter v. Goldfarb* (1925), 317 Ill. 620, 623-24, 148 N.E. 391, 392, 41 A.L.R. 343; and *Craft Refrigerating Mach. Co. v. Quinnipiac Brewing Co.*, 63 Conn. 551, 29 A. 76, 25 L.R.A. 856]. *** [T]he word "transaction" *** is held to mean every variety of affairs which forms the subject of negotiations or actions between the parties.' " ' [quoting from *LaHam; Van Meter*; and *Barnett's Adm'r v. Brand*, 165 Ky. 616, 177 S.W. 461.] In *Schmelzle v. Transportation Inv. Corp.*, 341 Ill. App. 639, [94 N.E.2d 682,] *** the court said: *** 'In the instant case, plaintiff and defendant had no personal or direct dealings in any county, however, certain acts, which were integral parts of plaintiff's cause of action and which he would have to establish in order to assert any rights on the instrument, occurred in *** Stephenson County ***. Under these circum-

stances, it would appear that a substantial part of the "transaction" out of which plaintiff's *** cause of action arose, did occur in Stephenson County ***.' "

In *Kenilworth Insurance Co. v. McDougal* (1974), 20 Ill. App. 3d 615, 617, 313 N.E.2d 673, 675, the court discussed "transaction" in the context of third parties.

"There are cases which use the language that the transaction refers only to dealings between the parties themselves and not to dealings which one of the parties had with third persons which are incidental or preliminary to and do not form the basis for the cause of action. [Citations.] But where dealings with third parties have a definite and direct bearing on the cause of action (for the purpose of determining venue), such dealings are part of the transaction out of which the cause of action arose."

Defendant's position that proper venue lies in Cook County is supported by *Kenilworth* to the extent that Percy Wilson's "transaction" with HUD had a direct bearing on plaintiff's cause of action, but we do not read the court's language as precluding the possibility that proper venue may lie in the county where dealings between the parties themselves occurred as well.

Finally, our independent research discloses a recent opinion from the First District Appellate Court, which considers the transactional element of venue in a factually analogous setting to the case before us. In *Hanna v. Breese Trenton Mining Co.* (1983), 114 Ill. App. 3d 657, 449 N.E.2d 226, a corporate defendant wrongfully withheld payment of declared dividends owed to the plaintiff. Plaintiff in *Hanna* resided in Cook County, Illinois, and the defendant corporation resided in Richland County, Illinois. Individual defendants resided in Clinton County, Illinois, and St. Peters, Missouri. Plaintiff shareholder had previously been paid dividends since 1976 and had received them in Cook County. In 1981, the corporation declared dividends of $20 per share of common stock and paid them out to certain of its shareholders, but not to the plaintiff, despite plaintiff's repeated demands. Plaintiff sued in Cook County and defendants moved for change of venue to Richland County. The motion was granted in the trial court, but reversed on appeal.

The *Hanna* court framed the issue before it thus: "[T]he issue here presented is whether nonpayment of dividends by a corporation, with its registered office in Richland County, to a shareholder residing in Cook County is sufficient basis under the statutory language [Ill. Rev. Stat. 1981, ch. 110, par. 2—101(b)] to authorize

venue in Cook County in a suit by the shareholder." (*Hanna v. Breese Trenton Mining Co.* (1983), 114 Ill. App. 3d 657, 658, 449 N.E.2d 226, 228.) Defendants' argument on appeal was that the only basis alleged by plaintiff for venue in Cook County was "non-receipt of a declared dividend" in Cook County, and that this could not be a "transaction" for purposes of the venue statute. The court disagreed. Relying primarily on *Bagarozy v. Meneghini* (1955), 8 Ill. App. 2d 285, 131 N.E.2d 792, the court observed that "an action for breach of contract is proper at the locale of that breach." Since payment of money is required at the payee's residence, the court concluded that the breach of a duty to pay dividends occurs at the shareholder's residence. On this basis, venue was proper in Cook County.

With the foregoing analyses in mind, we turn to the situation at hand to determine whether a part of that transaction out of which plaintiff's cause of action arose occurred in Peoria County. In the instant case, as in *Hanna*, plaintiffs complain of the breach of a contractual duty by reason of defendant's (or its predecessor in interest) failure to perform a duty owed to plaintiffs on the basis of an express agreement or past performance. Specifically, plaintiff complains that "Percy Wilson held itself out to be a competent mortgage banker and broker who would undertake to secure a firm commitment and then, once it had been obtained, secure timely extensions of same until such time as work on the project began." Plaintiff alleges breach of that duty in that Percy Wilson:

> "failed to make timely request for extension of the Firm Commitment which had been granted Plaintiffs but which was set to expire September 29, 1982;
>
> failed to take reasonable steps after September 29, 1982, to secure extension of the Firm Commitment which had previously been granted and which expired on that date; and
>
> failed to take reasonable steps to re-open the expired Firm Commitment within the time provided by law."

We note that duties as between mortgagee (defendant) and sponsor (plaintiffs) are not set forth in the agreement entitled "Commitment for Insurance of Advances" and issued by the Secretary of HUD. Similarly, the 1981 assignment document refers only to assignment of Hoffman's "interest" in the commitment. It does not describe or otherwise refer to any duties owed by the mortgagee to the sponsor. The fact that the relationships among the sponsor, HUD and the mortgagee may not have been established until HUD issued the firm commitment, as argued by defendant, does not diminish the fact

that duties owed plaintiffs by defendant's predecessors in interest must have had prior or independent sources from the firm commitment documents themselves. Affidavits and counteraffidavits of record establish that the duties plaintiffs have alleged, if such existed at all, must be derived from the original agreement entered into between Frey and Ring in Peoria in 1979, or from discussions between plaintiffs and Patricia Rose, the officer of Percy Wilson who was introduced to plaintiffs in Peoria upon Hoffman's assignment of the firm commitment in 1981. Furthermore, the duty allegedly breached in this case involved a "transaction" which was to be performed in Cook County, but which was for the sole benefit of and depended for its existence upon the project in Peoria County. Since the alleged duty to secure extensions or reopen the expired firm commitment allegedly existed only until work on the Lexington West apartment project began, it seems abundantly clear that "some part of the transaction out of which the cause of action arose" occurred in Peoria County—namely the failure to commence work on the project before September 29, 1982, when the prior extension expired.

■ Although we have no doubt that venue would have been proper in Cook County, the plaintiff's election to sue in Peoria County does not offend the legislative purpose of the Illinois venue statute. Witnesses to "some part" of the transaction will be convenienced by plaintiff's choice of venue, and, as plaintiff correctly observes, venue may properly lie in more than one jurisdiction. Where such is the case, the plaintiff's choice of one of two or more available jurisdictions should not be disturbed. The trial court committed no error in denying defendant's motion to transfer this cause to Cook County.

For the reasons stated herein, we affirm the order of the circuit court of Peoria County.

Affirmed.

WOMBACHER, J., concurs.

HEIPLE, P.J., concurs with the result.