THE SERVICEMASTER COMPANY, Plaintiff-Appellee, v. MARY THOMPSON HOSPITAL, Defendant-Appellant.

Second District   No. 2—88—0486

Opinion filed December 29, 1988.

Norman P. Jeddeloh, of Siegan, Barbakoff, Gomberg & Gordon, Ltd., of Chicago, for appellant.

Thomas H. Ryerson, James T. Ferrini, Kevin J. Young, and Richard C. Clark, all of Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (Edward M. Kay, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, Mary Thompson Hospital (the hospital), brings this interlocutory appeal pursuant to Supreme Court Rule 306 (107 Ill. 2d R. 306(a)(1)(iv)) from an order of the circuit court of Du Page County denying its motion to transfer venue from Du Page County to Cook County. The hospital contended Du Page County was a *forum non conveniens* and that no part of the transaction out of which the cause of action arose occurred in Du Page County.

Plaintiff, the ServiceMaster Company, in the business of supplying contract management services, filed a four-count complaint in Du Page County against the hospital for breach of contracts for its management of the hospital's housekeeping services, plant operations and maintenance, food service, and materials. At the transfer hearing, the hospital reserved its right to assert the ground of *forum non conveniens* at a later time, and the cause proceeded solely on the issue of transactional venue. Based on its review of the contracts and various affidavits submitted, the court found that "some of the transaction occurred in Du Page County" and denied the hospital's motion for transfer of venue.

The issue presented on this appeal is whether the court erred in finding that some part of the transaction out of which the cause of action arose occurred in Du Page County.

The parties entered into four management services agreements during the period June 1984 to June 1987. All four contracts required biweekly payments to ServiceMaster. It is undisputed that ServiceMaster's principal place of business is in Downers Grove, Du Page County, Illinois. The hospital's principal place of business at all relevant times herein was at 140 N. Ashland Avenue in Chicago, Cook County, Illinois, and it was not engaged in business in Du Page County. It is also undisputed, and this court may judicially notice (*May Department Stores Co. v. Teamsters Union Local No. 473* (1976), 64 Ill. 2d 153; *First State Bank v. Leffelman* (1988), 167 Ill. App. 3d 362), that the hospital, an incorporated voluntary nonprofit hospital primarily serving indigents, was granted permission by the Illinois Health Facilities Planning Board on July 7, 1988, to cease all

operations and close its facility on Ashland Avenue. According to its brief, the hospital is otherwise still in business and operating various facilities.

ServiceMaster filed its complaint in December 1987 upon the hospital's failure to make the payments specified in the agreements. The hospital's motion for change of venue, treated by the court as a motion to *transfer* venue, contended, *inter alia*, that no part of the transaction giving rise to the cause of action arose in Du Page County. The motion was supported by the affidavit of the hospital's chief operating officer, Steven G. Orcutt. *Inter alia*, Orcutt stated that the agreements were negotiated at the hospital with various officials of the ServiceMaster Corporation; that the agreements were required to be and were performed exclusively at the hospital and at no other location; and that any functions performed by ServiceMaster at any location other than the hospital relating to any of the agreements was merely preliminary to the performance of the agreements and did not constitute actual performance of any functions required by the agreements.

ServiceMaster's response alleged, *inter alia*, that it substantially performed its duties under the contracts at its home office in Du Page County; substantial contacts between itself and the hospital took place in Du Page County and the contracts themselves were executed by it in Du Page County. The response incorporated therein ServiceMaster's supporting memorandum of law and affidavits. It was stated in the affidavit of Ed Schmal, ServiceMaster's controller for health care operations, that he was familiar with the manner in which service contracts such as the ones between ServiceMaster and Mary Thompson Hospital are performed pursuant to normal practice and procedure at ServiceMaster; that to the best of his knowledge and belief, the Mary Thompson Hospital service contracts were performed consistently with the normal practice and procedure of ServiceMaster; financial record keeping, including review meetings records and education training records, occurs in the Du Page County offices of ServiceMaster; that record keeping relative to the issuance of the payroll to persons performing specific service functions is handled at the Du Page County office; that supplies necessary for the housekeeping contract are ordered out of the Du Page County office; that processing and payment of all procurements of food and related supplies from outside vendors occurs at the Du Page County offices by ServiceMaster's accounts payable department; and that the processing of payroll and food service procurement involves a substantial amount of work at the Du Page County offices. The affidavits of ServiceMaster's

president of central management services, Kenneth W. Creasman, and ServiceDirection's president, Patrick E. Gallagher, set forth the fact that their respective signing and execution of the contracts occurred in the offices of the ServiceMaster Company located in Downers Grove.

The hospital's reply memorandum was supported by three affidavits. It was stated in the affidavit of Steven Orcutt that he was in part responsible for negotiation of the agreements between the hospital and ServiceMaster; that all negotiations required took place at the hospital between the affiant, other hospital personnel, and Service-Master personal sales representative Clarence Smith; and that so far as in Orcutt's personal knowledge, the contracts between ServiceMaster and the hospital were all performed exclusively at the hospital. In her affidavit, Ivette Estrada, president and chief executive officer of the hospital, stated, *inter alia*, that ServiceMaster, through its sales representative Clarence Smith, solicited the opportunity to provide the various contractual services later agreed upon by calling upon her and other hospital administrative persons exclusively at the hospital; that after deliberation, the hospital informed Smith that it was interested in proceeding with the agreements; that Smith delivered each of the agreements, fully signed and sealed by ServiceMaster, to the hospital; and that the agreements were then signed by the affiant and other hospital administrative officials and given to Smith when he personally visited the hospital.

It was stated in the affidavit of Jeffrey Ellis that he was responsible for the financial affairs of the hospital; that it is his duty to see to the issuance of and delivery of checks to vendors for services performed and supplies provided; that he is familiar with the hospital's practices and procedures for the payment of money to ServiceMaster under the agreements at issue; that no standard system or procedure was established for the delivery of checks to ServiceMaster for services under the agreements; that initially, early on during the terms of the agreements, payments were mailed to ServiceMaster in Du Page County; that thereafter, at the request of the ServiceMaster Company, checks were handed by the affiant to ServiceMaster employees at the hospital.

■ Venue is properly fixed in the county of residence of any defendant joined in good faith or in the county in which the transaction or some part hereof occurred out of which the cause of action arose. (Ill. Rev. Stat. 1987, ch. 110, par. 2—101.) When a defendant moves to transfer venue, it is the defendant's burden to prove that the plaintiff's selection of venue was improper. (*Weaver v. Midwest*

*Towing, Inc.* (1987), 116 Ill. 2d 279, 285; *Wilson v. Central Illinois Public Service Co.* (1988), 165 Ill. App. 3d 533, 538-39; but see *Peterson v. Monsanto Co.* (1987), 157 Ill. App. 3d 508, 512-13.) "[T]he defendant must set out specific facts, not conclusions, and show a clear right to the relief asked for. [Citations.] Any doubts arising from the inadequacy of the record will be resolved against the defendant. [Citation.]" *Weaver*, 116 Ill. 2d at 285.

■ "The Illinois venue statute is designed to insure that the action will be brought either in a location convenient to the defendant, by providing for venue in the county of residence, or convenient to potential witnesses, by allowing for venue where the cause of action arose. [Citation.]" (*Baltimore & Ohio R.R. Co. v. Mosele* (1977), 67 Ill. 2d 321, 328; *Mauro v. Peterson* (1984), 122 Ill. App. 3d 466.) Venue may properly lie in more than one jurisdiction (*Frey Corp. v. Gilldorn Mortgage Midwest, Inc.* (1985), 131 Ill. App. 3d 548, 554), and where witnesses to "some part" of the transaction will be convenienced by the plaintiff's choice of one of two or more available jurisdictions, it should not be disturbed (*Frey*, 131 Ill. App. 3d at 554).

■ The hospital's initial contention is that the term "transaction" used in section 2—101 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—101(2)) should be narrowly construed to relate only to the immediate facts out of which the cause of action arose—that is, venue should lie where the actual breach arose—and, therefore, the facts pleaded by ServiceMaster (*e.g.*, how the agreements were negotiated and signed, where they were performed, communications between the parties relating to them) are "generally irrelevant." It cites *Hanna v. Breese Trenton Mining Co.* (1983), 114 Ill. App. 3d 657, *La Ham v. Sterling Canning Co.* (1943), 321 Ill. App. 32, and *Bagarozy v. Meneghini* (1955), 8 Ill. App. 2d 285, in support of its "narrow" construction argument.

Its reliance on those cases for its general proposition is misplaced, however. In *People ex rel. Carpentier v. Lange* (1956), 8 Ill. 2d 437, 441, it was stated:

> "Based upon the several broad meanings given to the term 'transaction' in *VanMeter v. Goldfarb*, 317 Ill. 620, and upon the observation in *Walters v. City of Ottawa*, 240 Ill. 259, that a cause of action 'includes every fact necessary for the plaintiff to prove to entitle him to succeed,—every fact that the defendant would have a right to traverse,' the italicized phrase ["or in which the transaction or some part thereof occurred out of which the cause of action arose"] has been interpreted to mean that, for purposes of venue, the places where the transaction,

or a part thereof, occurred out of which the cause of action arose *include those where any significant negotiations were carried on between the parties, where an agreement was signed, the place where it was, or was supposed to be performed, or where matters occurred that plaintiff has the burden of proving.* See: *La Ham v. Sterling Canning Co.*, 321 Ill. App. 32; *Heldt v. Watts*, 329 Ill. App. 408; *Schmelzle v. Transportation Investment Corp.*, 341 Ill. App. 639; *Keystone Steel and Wire Co. v. Price Iron and Steel Co.*, 345 Ill. App. 305; *Winn v. Vogel*, 345 Ill. App. 425; *Christopher v. West*, 345 Ill. App. 515; 1954 LF 557." (Emphasis added.)

(See also *Wier v. Ketterer* (1985), 133 Ill. App. 3d 751, 752; *Frey Corp. v. Gilldorn Mortgage Midwest, Inc.* (1985), 131 Ill. App. 3d 548, 551; *Hanna v. Breese Trenton Mining Co.* (1983), 114 Ill. App. 3d 657, 660.) In light of the above, the hospital's suggested narrow interpretation is without merit.

■ The hospital further contends that even if the "transaction" here is construed broadly as referring to the entire course of dealing between the parties, the facts cited by ServiceMaster are insufficient to establish venue in Du Page County. Specifically, the hospital asserts venue in Du Page County is not conferred simply because some work incidental to work required under the agreements was performed there by ServiceMaster, or the agreements were signed there by ServiceMaster, or some payments to ServiceMaster were paid there. We disagree.

ServiceMaster's complaint alleged that "substantial management services under [each of the agreements] were performed by [it] at its principal place of business located in Du Page County, Illinois." The work performed by ServiceMaster in Du Page County in connection with the agreements was further set forth in the affidavit of Ed Schmal. In arguing at the transfer hearing that the agreements were performed at the hospital in Cook County, the hospital stated that it was "not concerned so much about where ServiceMaster might have done the preliminaries necessary," thus acknowledging there was "necessary" preliminary work performed by ServiceMaster in Du Page County. None of the affidavits filed by the hospital in support of its motion for transfer of venue set forth specific facts to controvert Schmal's affidavit, and although the hospital now describes Schmal's affidavit as "defective" on the ground it is general and not specific, it made no objection on this ground at the transfer hearing.

The hospital cites *American Oil Co. v. Mason* (1971), 133 Ill. App. 2d 259, in support of its argument the services performed by Service-

Master in Du Page County were merely incidental to the transaction between them. In *American Oil*, however, venue in Cook County, the home office of the plaintiff, was found to be improper where the transaction, the signing of a dealer installment note, took place between the defendants, Frank Mason and three sureties on the note and the plaintiff's representative, Richard Fornell. The note was signed by Mason in Ogle County, and the gas station owned by plaintiff which Mason was to operate was in Ogle County. All defendants resided in De Kalb County and plaintiff's representative, Fornell, was "of De Kalb, Illinois." (133 Ill. App. 2d 259.) The trial court's denial of the defendant's motion to transfer venue to either De Kalb or Ogle County was reversed on appeal; the court found the billings, payments and deliveries routed through plaintiff's Chicago offices or warehouses were clearly incidental to the transaction between Fornell and the defendants out of which the cause of action arose. Plaintiff here is not a third party, however, as in *American Oil*, and the activities allegedly performed by ServiceMaster in Du Page County were not merely "incidental" to the transaction out of which the cause of action arose but were integral to it. As ServiceMaster notes, the plaintiff in a breach of contract action must prove that it performed the services for which payment is due (see *Nation Oil Co. v. R.C. Davoust Co.* (1964), 51 Ill. App. 2d 225), and the term "transaction" includes every fact which is an integral part of a cause of action. (*Carpentier*, 8 Ill. 2d at 441; see also *Kenilworth Insurance Co. v. McDongal* (1974), 20 Ill. App. 3d 615, 617.) Accordingly, the hospital has not met its burden of proving that venue in Du Page County could not be based on the fact that part of the work required by the agreements was performed by ServiceMaster in Du Page County.

ServiceMaster's complaint further alleged that each of the contracts "was accepted and substantially negotiated within Du Page County." According to the affidavits of Steven Orcutt and Ivette Estrada on behalf of the hospital, it appears negotiation of the contracts took place at the hospital in Cook County. However, it is also clear from Estrada's affidavit and those of ServiceMaster's Kenneth Creasman and Patrick Gallagher that the contracts were signed at ServiceMaster headquarters in Du Page County and then delivered to and signed by the hospital in Cook County.

■ As ServiceMaster argues, it is well settled that the place where a contract is signed and executed is the proper forum for litigation concerning a breach of that contract. (*Consolidated Gasoline Co. v. Lexow* (1942), 316 Ill. App. 257; *Keystone Steel & Wire Co. v. Price Iron & Steel Co.* (1952), 345 Ill. App. 305; see also *Standard Mutual*

*Insurance Co. v. Kinsolving* (1960), 26 Ill. App. 2d 180.) In *Lexow*, plaintiffs brought a suit in St. Clair County against the defendants which arose out of violation of a certain lease agreement entered into between them which pertained to the sale of oil and gasoline. The defendants were all residents of Madison County and filed a motion to dismiss on the basis venue in St. Clair County was not proper. Defendants' motion was granted but was reversed on appeal in light of plaintiffs' allegation, which was uncontradicted by the defendants, that the lease was made and executed partly in St. Clair County. The court reasoned:

> "Conceivably, the lease in question could have been made and executed partly in one county and partly in another. If one party to the lease signed in Madison county and another party thereto signed in St. Clair county, certainly the transaction would occur partly in one and partly in the other. Contrary to the contention of the [defendants], it would not depend upon who signed last, nor where the instrument was delivered." *Lexow*, 316 Ill. App. at 260.

*Lexow* was followed in *Keystone Steel & Wire Co. v. Price Iron & Steel Co.* (1952), 345 Ill. App. 305. There, the plaintiff filed suit in Peoria County against the defendant, a Chicago-based corporation, for breach of contract due to its failure to furnish scrap steel as required by the contract. The contract was prepared and signed by the plaintiff in Peoria County and forwarded to the defendant in Cook County. The defendant signed it and returned it to the plaintiff. The defendant moved to dismiss the suit or transfer it to Cook County, where its office was located. The trial court overruled the motion to dismiss or to transfer the case. Following judgment against it in a bench trial, the defendant appealed.

On appeal, the court affirmed the trial court's overruling of the defendant's motion to transfer the cause to Cook County. Relying on *Lexow*, the court stated:

> "We agree with the law as stated in this case that it makes no difference which party signed first, or where it was delivered. It shows that part of the transaction took place in Peoria county, and the other part in Cook county." *Keystone*, 345 Ill. App. at 309.

We find unpersuasive the hospital's attempt to distinguish the instant cause on the basis the "offer and acceptance" here both occurred at the hospital. The hospital contends ServiceMaster's delivery of the agreements "signed and sealed" to the hospital constituted the offer, and its signing of the agreements, also at the hospital, consti-

tuted the acceptance whereby a valid contract was formed. Clearly, principles of offer and acceptance were not dispositive in *Lexow* and *Keystone* for purposes of determining venue. Each court found "it would not depend upon who signed last [or "first" (*Keystone*, 345 Ill. App. at 309)], nor where the instrument was delivered." *Lexow*, 316 Ill. App. at 260.

We conclude venue here was proper in Du Page County, where it is undisputed the contract was signed by ServiceMaster in Du Page County.

The hospital further contends venue in Du Page County was not proper because the biweekly payments required by the contract were being made to ServiceMaster's agent at the hospital in Cook County at the time the breach occurred.

■ This contention is based on the hospital's incorrect premise that the transactional venue phrase in section 2—101 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—101) should be narrowly construed to encompass only the situs of the breach. That phrase has been broadly interpreted to mean not only where an agreement "was supposed to be performed" but also "where it was." (*Carpentier*, 8 Ill. 2d at 441.) The fact payments were routinely being made to ServiceMaster's agent at the hospital in Cook County at the time the hospital allegedly breached its contract does not negative the prior connection with Du Page County where payments "early on" during the terms of the agreements were mailed to and received by ServiceMaster in Du Page county.

■ The hospital's final contention is that the court's finding that venue here was proper in Du Page County offends the legislative purpose of the venue statute, which is to ensure the convenience of the defendant or witnesses. (*Mauro v. Peterson* (1984), 122 Ill. App. 3d 466.) The hospital asserts it would be "greatly inconvenienced by being required to proceed with the trial of the case in Du Page County." It bases this assertion on the affidavit of Steven Orcutt in which affiant states the burden of having employees of the hospital called upon to testify or provide depositions will be "correspondingly greater" if they are required to travel to Du Page County, thus reducing the hospital's efficiency and ability to provide high-quality care for the minimum possible amount and causing it to incur "great additional expense."

Without even considering how the subsequent closing of the hospital would affect this argument, Orcutt's affidavit was offered in support of the hospital's motion to transfer venue which asserted *forum non conviens* as an alternate ground. That ground was reserved by

the hospital below, however, and is not relevant here. The purpose of the venue statute may be said to have been served where "[w]itnesses to 'some part' of the transaction will be convenienced by plaintiff's choice *** of one of two or more available jurisdictions." (See *Frey*, 131 Ill. App. 3d at 554.) Moreover, this court is aware that Du Page and Cook Counties border each other, and that the City of Wheaton, the county seat of Du Page County, is located a distance of only about 25 miles from the City of Chicago. As such, no inconvenience to parties or witnesses serious enough to defeat the plaintiff's choice of forum here may be said to exist. See *Meyers v. Bridgeport Machines Division of Textron, Inc.* (1986), 113 Ill. 2d 112, 120-21.

The judgment of the circuit court of Du Page county is affirmed.

Affirmed.

NASH and INGLIS, JJ., concur.